Record No. 23-2192
(1:23-cv-01177-LMB-IDD)

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

NORTHERN VIRGINIA HEMP AND AGRICULTURE,
LLC, *et al.*,

Plaintiffs – Appellants,

v.

THE COMMONWEALTH OF VIRGINIA, *et al.*,

Defendants – Appellees.

Appeal from the United States District Court for the
Eastern District of Virginia, Alexandria Division

OPENING BRIEF OF APPELLANTS

James N. Markels (VSB #68399)
jnm@cwattorney.com
Thomas Westberg-Croessmann (VSB #88086)
twc@cwattorney.com
CROESSMANN & WESTBERG, P.C.
8000 Towers Crescent Drive
Suite 1575
Tysons, VA 22182
Phone: (703) 483-3550
Facsimile: (703) 349-3414

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1, Appellants state as follows:

Further to the disclosure statements filed with the Court on November 29, 2023 and December 5, 2023, Appellants state that no Appellant is a publicly held entity, no Appellant has a parent corporation, no Appellant has stock owned by any publicly held corporation or entity, no publicly held corporation or entity has a direct financial interest in the outcome of this litigation, no Appellant is a trade association, this case does not arise out of a bankruptcy proceeding, and this is not a criminal case in which there was an organizational victim.

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ………………………………………………………... iii

Jurisdictional Statement …………………………………………………... 1

Statement of Issues Presented for Review …………………………………... 1

Statement of the Case …………………………………………………... 2

Statement of Relevant Facts …………………………………………………3

    I.     Federal Law Regarding Hemp. …………………………………………3

    II.    SB 903 Imposed the Total THC Standard and Sales Restriction. ……… 5

    III.   The Appellants Are Irreparably Harmed by SB 903. ……………….... 7

Summary of Appellants' Argument …………………………………………... 10

Argument …………………………………………………………………... 12

    I.     Standard of Review for Denials of Injunctive Relief. ………………… 12

    II.    The District Court Erred In Holding that the Total THC Standard
         Is Not Preempted by the Farm Act. …………………………………… 14

         A.    The Total THC Standard Is Expressly Preempted by the
              Farm Act. ……………………………………………………….. 16

         B.    The Total THC Standard Is Preempted by the Farm Act under
              Field Preemption. ……………………………………………… 21

         C.    The Total THC Standard Is Preempted by the Farm Act under
              Conflict Preemption. …………………………………………… 23

    III.   The District Court Erred in Holding that the Sales Restriction
         Does Not Violate the Dormant Commerce Clause. ……………………28

i

IV.     The District Court Erred in Holding that the Appellants Were Not Irreparably Harmed by SB 903. ………………………………………… 33

V.      The District Court Erred in Holding that the Balance of the Equities and the Public Interest Did Not Weigh in Favor of Injunctive Relief. …………………………………………………… 39

Conclusion ……………………………………………………………… 41

Request for Oral Argument ……………………………………………… 41

Certification of Compliance …………………………………………….... 42

Certificate of Service …………………………………………………… 43

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Abbot v. American Cyanamid Co.*, 844 F.2d 1108 (4th Cir. 1988) ……………... 23

*Air Evac EMS, Inc. v. McVey*, 37 F.4th 89 (4th Cir. 2022) ……………………... 34

*AK Futures, LLC v. Boyd St. Disco, LLC*, 35 F.4th 682 (9th Cir. 2022) ………... 16

*Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987) ……………. 39

*Arizona v. United States*, 567 U.S. 387 (2012) …………………………………. 21

*Aslanturk v. Hott*, 459 F. Supp. 3d 681 (E.D. Va. 2010) ………………………... 34

*Ass'n for Accessible Medicines v. Frosh*, 887 F.3d 664 (4th Cir. 2018) ……. 29, 32

*Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935) ……………………………. 32

*Bio Gen, LLC v. Sanders*,
    2023 U.S. Dist. LEXIS 158785 (E.D. Ark. Sept. 7, 2023) ………………. 18

*Brown v. Hovatter*, 561 F.3d 357 (4th Cir. 2009) ……………………………. 28-29

*Capital Cities Cable, Inc. v. Crisp*, 457 U.S. 691 (1984) ………………………. 15

*Centro Tepeyac v. Montgomery County*, 722 F.3d 184 (4th Cir. 2013) ………… 13

*Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582 (2011) ………………. 16

*Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311 (1981) ….. 23

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) …………………………. 21

*College Loan Corp. v. SLM Corp.*, 396 F.3d 588 (4th Cir. 2005) ………………. 23

*Columbia Venture, LLC v. Dewberry & Davis, LLC*,
    604 F.3d 824 (4th Cir. 2010) …………………………………………... 23

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ………………….. 23

*CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993) ………………… 16

*C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020) …. 12, 20-21, 25-26

*Dennis v. Higgins*, 498 U.S. 439 (1991) …………………………………………… 28

*Di Biase v. SPX Corp.*, 872 F.3d 224 (4th Cir. 2017) ……………………….. 12-13

*Duke's Investments LLC v. Char*, 2022 WL 1718976 (D. Haw. 2022) …………. 26

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) …………………………………….. 33

*Emmett v. Johnson*, 489 F. Supp. 2d 543 (E.D. Va. 2007) ……………………… 34

*Ex parte Young*, 209 U.S. 123 (1908) ………………………………………….. 1

*Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978) …………………... 32

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) …………………. 23

*Golden v. Zwickler*, 394 U.S. 103 (1969) ……………………………………… 34

*Gonzales v. Raich*, 545 U.S. 1 (2005) …………………………………… 17-18, 20

*Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) …………………… 16

*H&R Block Eastern Enterprises, Inc. v. Raskin*, 591 F.3d 718 (4th Cir. 2010) … 23

*Hillsborough County v. Automated Medical Labs, Inc.*,
   471 U.S. 707 (1985) ……………………………………………………….... 14-15

*Hines v. Davidowitz*, 312 U.S. 52 (1941) …………………………………….. 15

*H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525 (1949) …………………… 29

*Independent Bankers Ass'n of America v. Heimann*,
   627 F.2d 486 (D.C. Cir. 1980) …………………………………………… 38

iv

*In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517 (4th Cir. 2003) .......... 34

*Jones v. Rath Packing Co.*, 430 U.S. 519 (1977) ..................................... 14

*Kentucky Hemp Assoc. v. Quarles*,
     Case No. 21-CI-00836 (Boone Cir. Ct., Div. I, Feb. 28, 2022) ............. 18

*League of Women Voters of N.C. v. North Carolina*,
     769 F.3d 224 (4th Cir. 2014) .................................................... 14

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ..................................... 22

*Morris v. Hamilton*, 225 Va. 372, 302 S.E.2d 51 (1983) ........................... 27

*Nat'l Pork Producers Council v. Ross*, 598 U.S. ___ (2023) ..................29-31

*Nken v. Holder*, 556 U.S. 418 (2009) ...............................................13, 39

*Northwest Cent. Pipeline Corp. v. State Corp. Comm'n*,
     489 U.S. 493 (1989) ............................................................ 22

*Ohio Oil Co. v. Conway*, 279 U.S. 813 (1929) ..................................... 35

*Oregon Waste Sys. Inc. v. Dept. of Environmental Quality of Oregon*,
     511 U.S. 93 (1994) ............................................................. 29

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .......................................... 34

*Pacific Gas and Electric Co. v. State Energy Res. Conservation & Dev. Comm'n*,
     461 U.S. 190 (1983) ......................................................... 21-22

*Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169 (2d Cir. 1995) ....................... 35

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) ................................ 29-30

*PPL Energyplus, LLC v. Nazarian*, 753 F.3d 467 (4th Cir. 2014) ................ 22

*Pro-Concepts, LLC v. Resh*,
     2013 U.S. Dist. LEXIS 151714 (E.D. Va. Oct. 22, 2013) .................... 34

*Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75 (4th Cir. 1989) …. 37

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ………………………… 15

*R.K. v. Lee*, 575 F. Supp. 3d 957 (M.D. Tenn. 2021) ……………………….. 39

*SASS Group, LLC v. State of Georgia*,
      Case No. 2022CV362007 (Fulton Sup. Ct. April 15, 2022) ……………... 18

*Seaman v. Virginia*, 593 F. Supp. 3d 293 (W.D. Va. 2022) …………………….. 39

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ……………. 36

*Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690 (4th Cir. 2021) ………..... 37-38

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ………………………..... 35

*United States v. Goodwin*, 457 U.S. 368 (1982) ………………………………… 39

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) …………………………... 39

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ……………… 10, 13, 34

## Statutes

7 U.S.C. § 1639o …………………………………………………… *passim*

7 U.S.C. § 1639p ……………………………………………… 5, 18-19, 24

7 U.S.C. § 1639q ………………………………………………………… 24

7 U.S.C. § 1639r ……………………………………………………… 4, 24

7 U.S.C. § 5940 …………………………………………………………… 3-4

21 U.S.C. § 801 ………………………………………………………... 3

21 U.S.C. § 802 ………………………………………………………... 4

21 U.S.C. § 812 …………………………………………………… 4, 17

28 U.S.C. § 1291 ……………………………………………………… 1

28 U.S.C. § 1292 ……………………………………………………… 1

28 U.S.C. § 1331 ……………………………………………………… 1

28 U.S.C. § 1337 ……………………………………………………… 1

42 U.S.C. § 1983 …………………………………………………….. 1-2

U.S. Const. Art. 1, § 8 ………………………………………………… 1

U.S. Const. Art. IV, cl.2 …………………………………… 1, 14, 39-40

Va. Code § 3.2-4112 ……………………………………………….. 6, 26

Va. Code § 3.2-4113 …………………………………………26-27, 34, 38

Va. Code § 3.2-4116 …………………………………… 2, 7, 25, 30

Va. Code § 3.2-4123 ………………………………………… 7, 40-41

Va. Code § 3.2-4126 ……………………………………………... 6

Va. Code § 3.2-5145.1 ……………………………………….. 6, 30

Va. Code § 3.2-5145.4 ……………………………………………… 6

Va. Code § 4.1-600 …………………………………………… 6, 24, 38

Va. Code § 18.2-247 ………………………………………… 6, 24, 38

Va. Code § 18.2-248 ………………………………………… 6, 24, 38

Va. Code § 18.2-248.1 ……………………………………… 6, 24, 38

Va. Code § 18.2-371.2 ……………………………………… 6, 24, 38

Va. Code § 54.1-3401 ............................................................... 6, 38

Va. Code § 54.1-3408 ............................................................... 6, 38

Va. Code § 54.1-3408.3 ............................................................... 6

## **Other Authorities**

7 C.F.R. § 990.3 ....................................................................... 19

7 C.F.R. § 990.63 .................................................................... 4-5

Amy Abernathy, Principal Deputy Commissioner of the FDA,
*Hemp Production and the 2018 Farm Bill*,
U.S. Senate Testimony, July 25, 2019 ....................................... 24

Fed. R. Civ. P. 65 ..................................................................... 1

Van Zile, Bailments & Carriers, 2d ed. (1890) § 128 .......................... 27-28

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1337(a) because Appellants' Amended Complaint raised federal questions under the United States Constitution, specifically the Commerce Clause of Article I, Section 8, Clause 3, and the Supremacy Clause of Article IV, Clause 2, arguing that specific portions of Virginia law were expressly or impliedly preempted by the Agriculture Improvement Act of 2018 (the "Farm Act"), or otherwise violated the dormant Commerce Clause. The district court also had jurisdiction under 28 U.S.C. § 1331 because Appellants' Amended Complaint lodged claims under 42 U.S.C. § 1983. The district court was authorized to issue the requested injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908) and Fed. R. Civ. P. 65.

This Court has jurisdiction to hear this appeal under 28 U.S.C. §§ 1291 and 1292(a)(1).

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred when it held that Appellants were not likely to succeed on the merits of their claim that the federal government's definition of hemp in 7 U.S.C. § 1639o(1) expressly preempted Virginia's law imposing a stricter standard for hemp.

2. Whether the district court erred when it held that Appellants were not likely to succeed on the merits of their claim that the federal government's definition

of hemp in 7 U.S.C. § 1639o(1) impliedly preempted Virginia's law imposing a stricter standard for hemp through either field or conflict preemption.

3. Whether the district court erred when it held that Appellants were not likely to succeed on the merits of their claim that Va. Code § 3.2-4116(C) violates the dormant Commerce Clause by forbidding Virginia hemp growers and processors from selling their raw product to manufacturers who may use that product to create products that violate Virginia's stricter hemp standard, where no other State employs that standard, thus blocking only out-of-state buyers from purchasing Virginia industrial hemp.

4. Whether the district court erred when it held that Appellants did not suffer irreparable harm as a result of the challenged Virginia laws.

5. Whether the district court erred when it held that the balance of the equities and the public interest do not weigh in favor of Appellants' requested preliminary injunction.

## STATEMENT OF THE CASE

Appellants filed the instant case in the district court seeking declarative and injunctive relief, along with relief under 42 U.S.C. § 1983, alleging that certain portions of Virginia Senate Bill 903 ("SB 903") which imposed a stricter standard on hemp products than was imposed by the Agriculture Improvement Act of 2018 (the "Farm Act"), and which prohibited Virginia growers and processors of hemp

from selling to out-of-state buyers, were preempted by the Farm Act or prohibited under the dormant Commerce Clause. Joint Appendix ("JA") 81-139.

The same day they initiated this suit, Appellants filed a motion for preliminary injunction seeking immediate enjoinment of the challenged portions of SB 903. JA 159-345, 669-714. Appellees opposed that motion. JA 346-668. The district court heard argument on September 29, 2023. JA 716-739. On October 30, 2023, the district court entered an Order denying Appellants' motion. JA 767. Appellants filed their notice of appeal of that motion on November 9, 2023. JA 768-769.[1]

## STATEMENT OF RELEVANT FACTS

### I.     Federal Law Regarding Hemp.

In 1970, Congress passed the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq*., making it illegal to grow, possess, or use marijuana, a Schedule 1 drug, throughout the United States. It did not distinguish between marijuana used recreationally and hemp that could be used for medical or industrial purposes—both were equally illegal. The legal status of hemp did not change under the Agricultural Act of 2014 established the Hemp Research Pilot Program, 7 U.S.C. § 5940(b), which allowed hemp cultivation for research purposes only by institutions of higher learning or state departments of agriculture. The 2014 law specifically defined

---

[1] By an order entered on November 15, 2023, the district court stayed the case before it while this appeal is pending.

"industrial hemp" as "the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a Delta-9 tetrahydrocannabinol ("THC") concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. 5940(a)(2).

The Farm Act, enacted in 2018, formally legalized "hemp" or "industrial hemp," defined as: "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a Delta-9 [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). By its terms, the federal definition did not include consideration of delta-8 THC or any other THC isomers in that definition. The Farm Act also excluded hemp from the definition of marijuana, 21 U.S.C. § 802(16), and added "[THC], except for [THC] in hemp" as a Schedule 1 drug, which emphasized that hemp was no longer criminalized under the CSA. 21 U.S.C. § 812(c).

The Farm Act included a note with a Rule of Construction that stated: "Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp [as defined in 7 U.S.C. § 1639o(1)] or hemp products." The same note stated: "No State . . . shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with [federal law] through the State[.]" Further to that note, and pursuant to authority granted under 7 U.S.C. § 1639r(a)(1)(A) of the Farm Act, the Secretary of Agriculture promulgated 7 C.F.R.

§ 990.63, which states: "No State . . . may prohibit the transportation or shipment of hemp lawfully produced" under federal regulations.

The Farm Act granted States "primary regulatory authority over the production of hemp" in their respective territories by submitting to the Secretary of Agriculture a plan to monitor and regulate that production. 7 U.S.C. § 1639p. Such a plan had to include certain terms, including "a practice to maintain relevant information regarding land on which hemp is produced" and a "procedure for testing . . . Delta-9 [THC] concentration levels of hemp produced in the State[.]" 7 U.S.C. § 1639p(a)(2)(A). However, States were allowed to pass laws regarding the "production" of hemp that were "more stringent" than required by federal law. 7 U.S.C. § 1639p(a)(3)(A).[2]

## II. SB 903 Imposed the Total THC Standard and Sales Restriction.

Prior to July 1, 2023, Virginia law mirrored federal law with regard to hemp. Virginia enacted SB 903 after receiving reports of children becoming ill from ingesting hemp products containing delta-8 THC, an isomer of delta-9 THC naturally found in cannabis that is less intoxicating than delta-9 THC. JA 401-404, 696. Delta-8 THC is not synthetic. *Id.* 697.

---

[2] Virginia submitted a plan pursuant to 7 U.S.C. § 1639p that was approved by the U.S. Department of Agriculture (the "Virginia Plan"), and which, by its terms, only concerned the cultivation of hemp within the Commonwealth. JA 205-229.

There are two main things that SB 903 did that are being challenged in this lawsuit, both of which went into effect on July 1, 2023 without any transition period. First, it mandated that hemp-derived products "(a) contain[ ] a total [THC] concentration of no greater than 0.3 percent and (b) contain[ ] either no more than two milligrams of total [THC] per package or an amount of cannabidiol ("CBD")[3] that is no less than 25 times greater than the amount of total [THC] per package" (the "Total THC Standard"). Va. Code §§ 3.2-4112, 3.2-4126(B), 3.2-5145.1, 3.2-5145.4, 4.1-600. Cannabis oils are limited to "10 milligrams of [THC] per dose." Va. Code § 54.1-3408.3(A). The total THC levels for these products are measured by using "any naturally occurring or synthetic [THC]," regardless of whether it was Delta-9 THC or an isomer thereof. *Id.* Only those products that meet the Total THC Standard are excluded from Virginia's definition of marijuana. Va. Code §§ 4.1-600, 18.2-247(D), 54.1-3401, 54.1-3408. Marijuana is still otherwise illegal in Virginia except in small amounts for personal use. *See* Va. Code §§ 18.2-247(D), 18.2-248, 18.2-248.1, and 18.2-371.2.

---

[3] CBD is a non-psychoactive compound in cannabis that has medicinal properties. *See*: https://www.cancer.gov/publications/dictionaries/cancer-drug/def/cannabidiol

Under the Total THC Standard, hundreds if not thousands of hemp products that were legal under the Farm Act were immediately converted into illegal hemp (the "Banned Products").[4] JA 231-248.

The second thing SB 903 did was mandate that a processor of industrial hemp "shall not sell industrial hemp . . . to a person if the processor knows or has reason to know that such person will use the industrial hemp or substance containing industrial hemp extract in a substance that [violates the Total THC Standard]" (the "Sales Restriction"). Va. Code § 3.2-4116(C). In other words, SB 903 forbid a processor of that hemp to sell the product to anyone, anywhere in the world, who might use it to make a product that violates the new Total THC Standard, even if it is legal to do so where that buyer is located, and even if that buyer has no intention of selling those products in Virginia.

### III.    The Appellants Are Irreparably Harmed by SB 903.

Appellant Northern Virginia Hemp and Agriculture, LLC ("NOVA Hemp") is a Virginia business and licensed hemp processor that manufactures hemp products for retail sale in Virginia and sells those products at a store located in Marshall,

---

[4] Importantly, this lawsuit did not challenge the portions of SB 903 that imposed packaging requirements or age restrictions. *See* Va. Code §§ 3.2-4123(A)(1) (requirement of "child-resistant packaging"); (A)(2) (requiring label on THC products stating that "the product may not be sold to persons younger than 21 years of age"); and (B) (prohibiting sale of "a regulated hemp product that depicts or is in the shape of a human, animal, vehicle, or fruit").

Virginia pursuant to a Virginia-issued license. JA 298-299. Prior to July 1, 2023, NOVA Hemp manufactured over 200 products that contained less than 0.3% delta-9 THC in conformance with the federal definition of hemp under 7 U.S.C. § 1639o(1), and sold those products at its retail store. *Id.* 299. In 2022, NOVA Hemp had approximately $490,000 in gross sales, and was projecting gross sales of $650,000 in 2023. *Id.* SB 903 converted approximately 95% of NOVA Hemp's hemp products into Banned Products, treating them as illegal marijuana under Virginia law even though those products were compliant with federal law. *Id.* As a direct result of that change, NOVA Hemp suffered a catastrophic 90% drop in revenue, as consumers were not interested in buying hemp products that were compliant with the Total THC Standard. *Id.* 299-300 Its workers and owners also risked criminal sanction for possessing, stocking, or selling Banned Products. *Id.* 299. NOVA Hemp was forced to close its retail store as a result. *Id.* 731.

Appellant Rose Lane is an elderly resident of Virginia. *Id.* 302. She suffers from arthritis, which causes her discomfort, difficulty sleeping, and other problems. *Id.* She had been prescribed a variety of medications by her primary care physician and other medical professionals to treat those symptoms, but none were effective. *Id.* However, she did find relief from her arthritis symptoms from taking products that contain hemp. *Id.* 302-303. When SB 903 went into effect, the products she relied upon were Banned Products and therefore illegal to purchase. *Id.* 303. She

now fears that she will be unable to treat her arthritis symptoms, and may face criminal sanction for still possessing the remaining Banned Products that she has left. *Id.*

Appellant Franny's Operations, Inc. ("Franny's Farmacy") is a North Carolina corporation that manufactures hemp products that are compliant with 7 U.S.C. § 1639o(1) for retail sale, and ships those products to retail locations in North Carolina and other states, including a Franny's Farmacy franchise in Virginia. *Id.* 266-267. Franny's Farmacy also operates a franchise in Connecticut that sells Franny's Farmacy's hemp products. *Id.* 267. Most of Franny's Farmacy's hemp products were converted into Banned Products when SB 903 went into effect. *Id.* As a result, Franny's Farmacy's Virginia franchise suffered a catastrophic 90% drop in revenues, again because customers did not demand hemp products that complied with the Total THC Standard. *Id.* 268. Additionally, Franny's Farmacy, as an out-of-state manufacturer of hemp products, is no longer able to purchase industrial hemp from Virginia processors because SB 903 prohibits it. *Id.* 268-269. Franny's Farmacy also is having to incur additional charges when it ships hemp products from its North Carolina manufacturing base to its franchise in Connecticut, because shippers face potential liability transporting Franny's Farmacy's hemp products through Virginia—which convert into illegal marijuana upon entering Virginia—which is the shortest path between the two locations. *Id.* 267-268.

Economic studies presented to the district court, which were not rebutted by Appellees, indicate that SB 903 will wipe out approximately *80%* of the retail market for hemp products in Virginia. *Id.* 306-345.

## SUMMARY OF APPELLANTS' ARGUMENT

Appellants are entitled to a preliminary injunction enjoining the Total THC Standard and the Sales Restriction because they satisfy all the factors set forth in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (a plaintiff must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.").

Appellants are likely to succeed on the merits because the Total THC Standard is preempted by the Farm Act. It is expressly preempted because the Farm Act set the standard for what constitutes legal hemp as opposed to illegal marijuana, and expressly forbid the States from interfering in the interstate commerce of hemp or from blocking the transportation of hemp through their territories as the Total THC Standard does by banning federally-legal hemp products. The Total THC Standard is also impliedly preempted under field preemption because Congress clearly intended to occupy the field as to what constitutes legal hemp in the United States and did not give the States authority to adopt stricter standards. The doctrine of conflict preemption also preempts the Total THC Standard because it creates a

stricter standard for hemp in Virginia, making the Banned Products illegal as marijuana under Virginia law and subjecting those who possess, transport, or transact those products to criminal liability, which conflicts with Congress' intent to create a national market for hemp products.

Appellants are also likely to succeed on the merits because the Sales Restriction violates the dormant Commerce Clause. The plain function of the Sales Restriction is to prohibit Virginia processors from being able to sell their products to out-of-state purchasers, like Franny's Farmacy, since no other State has adopted Virginia's Total THC Standard.

Appellants have also shown they have each been irreparably harmed by SB 903. The district court ignored Appellants' clear proof of ongoing irreparable harm and instead decided that Appellants' filing of their lawsuit on September 1, 2023, two months after SB 903 went into effect on July 1, 2023, was enough delay to warrant denial of relief. The district court also erroneously held that Appellants did not face criminal liability from SB 903, despite the obvious fact that SB 903 converted the Banned Products into illegal marijuana, making Appellants' possession or transaction of those products subject to criminal sanction.

Finally, Appellants have shown that the balance of the equities and the public interest, which are merged into a single inquiry in this situation, favor an injunction, for several reasons that the district court erroneously discarded.

## ARGUMENT

The federal government, through the Farm Act, intentionally opened a nationwide market in hemp, solely defined by its concentration of delta-9 THC—despite knowing about the presence of other less-intoxicating and less-concentrated isomers of THC that could be present in hemp, including delta-8 THC—and mandated in its Rule of Construction that the States could not interpret the Farm Act to impede the "interstate commerce" of hemp. SB 903, by converting hundreds if not thousands of federally-legal hemp products into illegal marijuana in Virginia through the Total THC Standard, infringes on Congress' power under the Commerce Clause to protect hemp in interstate commerce, and thus is preempted. The district court ignored the Rule of Construction and instead relied on a nonbinding and erroneous ruling from the Seventh Circuit, *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020), to rule that SB 903 was not preempted by the Farm Act. The district court also erred in holding that the Sales Restriction did not violate the dormant Commerce Clause, and that the Appellants were not irreparably harmed and the balance of the equities and public interest did not lie in favor of enjoining SB 903. For the reasons stated herein, the district court's ruling must be reversed.

## I.     Standard of Review for Denials of Injunctive Relief.

This Court reviews a district court's denial of a motion for preliminary injunction for abuse of discretion. *Di Biase v. SPX Corp.*, 872 F.3d 224, 229 (4th

Cir. 2017). In determining whether the district court abused its discretion, this Court reviews the district court's factual findings for clear error and its legal conclusions *de novo*. *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 188 (4th Cir. 2013).

To obtain the "extraordinary relief" of a preliminary injunction, a plaintiff must establish all four of the so-called *Winter* factors: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm if preliminary relief is not granted; (3) that the balance of equities favors him; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. When the government is the defendant, as here, those last two prongs merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Appellants fulfilled the first prong of likelihood of success on the merits because the Farm Act, as a lawful exercise of Congress' Commerce Clause power, preempted the Total THC Standard. Appellants were also likely to succeed on the merits of their claim that the Sales Restriction violated the dormant Commerce Clause. The district court erred in holding otherwise.

Appellants met the requirement of irreparable harm because the effect of SB 903 transforming federally-legal Banned Products into illegal marijuana exposed Appellants to criminal sanction, destroyed their businesses, and denied an elderly lady access to products that treated her arthritis. The district court erred in holding that Appellants' filing of their case a mere two (2) months after SB 903 went into effect completely jettisoned their claim of irreparable harm, and erred in holding that

the Appellants did not face any potential criminal sanctions for possessing the Banned Products.

Finally, the district court erroneously held that the balance of the equities and the public interest did not favor an injunction, effectively elevating the interests of Virginia over the interest of Congress, which had already determined that delta-8 THC and other THC isomers did not pose a grave threat to the health of Americans. This Court should reverse the district court's order and instruct the district court to enter the requested injunction to the Total THC Standard and Sales Restriction of SB 903. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 248 (4th Cir. 2014) ("Appellate courts have the power to vacate and remand a denial of a preliminary injunction with specific instructions for the district court to enter an injunction.").

## II. The District Court Erred in Holding that the Total THC Standard Is Not Preempted by the Farm Act.

The Supremacy Clause, U.S. Const., Art. IV, cl.2, mandates that Congress, acting within its constitutional limits, is empowered to pre-empt and supersede state law in multiple ways. First, it can state that it is doing so in express terms. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977). Alternatively, "Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Hillsborough County*

*v. Automated Medical Labs, Inc.*, 471 U.S. 707, 713 (1985) (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "Pre-emption of a whole field also will be inferred where the field is one in which 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.*

"Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *Hillsborough County*, 471 U.S. at 713. Such a conflict exists where the State's law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (*quoting Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Federal regulations can also preempt state laws. *See*, *e.g.*, *Capital Cities Cable, Inc. v. Crisp*, 457 U.S. 691, 699 (1984). However, there is an "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice*, 331 U.S. at 230.

The district court erred in holding that Appellants were not likely to succeed on the merits of their claim that the Total THC Standard was preempted by the Farm Act, either expressly or by implication.

### A. The Total THC Standard Is Expressly Preempted by the Farm Act.

SB 903's Total THC Standard, which adds in consideration of other forms of THC into the determination of whether a substance is legal hemp, is expressly preempted by the Farm Act, and the district court erred in holding that Appellants were not likely to prevail on the merits on that challenge.

For matters of express preemption, the focus is on "statutory intent," and this Court should "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009); *and see Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) ("When a federal law contains an express preemption clause, we 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'") (*quoting CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

Here, the Farm Act expressly defined hemp as including "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers" of the cannabis plant that have a delta-9 THC concentration of no more than 0.3 percent. 7 U.S.C. § 1639o(1). By that definition, other forms of THC like delta-8 THC are therefore legal under the Farm Act so long as they are derived or extracted from the cannabis plant. *See AK Futures, LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 690-91 (9th Cir. 2022) (holding that delta-8 THC was a "derivative, extract, or cannabinoid

originating from the cannabis plant" and therefore it was legal under the Farm Act). That conclusion is further reinforced by the fact that the Farm Act amended the CSA to include THC as a Schedule 1 drug but specifically excluded any "[THCs] in hemp," not merely delta-9 THC, from that scope. 21 U.S.C. § 812(c).

Congress also took care to add the Rule of Construction, which emphasized that "[n]othing in this title or an amendment made by this title prohibits the *interstate commerce* of hemp [as defined in 7 U.S.C. § 1639o(1)] *or hemp products*." Pub. L. 115-334, § 10114 (codified at 7 U.S.C. § 1639o note) (emphasis added). It also expressly prohibited the States from "prohibit[ing] the transportation or shipment of hemp or hemp products produced in accordance with [federal law] through the State[.]" *Id.*

Together, these provisions make it clear that the federal government was creating a nationwide market for hemp as solely determined by its concentration of delta-9 THC and emphasized that Farm Act protected hemp in interstate commerce. States were therefore not permitted to create their own, stricter definitions of hemp that included consideration of the concentrations of other kinds of THC, because that would impede the interstate commerce market in federally-legal hemp, as SB 903 indisputably does by making the Banned Products illegal.[5] Other courts have come

---

[5] The scope of interstate commerce is broad, including even purely intrastate activities that "substantially affect" interstate commerce. *Gonzales v. Raich*, 545 U.S. 1, 17 (2005). Just as allowing a State to legalize a subset of marijuana for

to the same conclusion. *See Bio Gen, LLC v. Sanders*, 2023 U.S. Dist. LEXIS 158785

(E.D. Ark. Sept. 7, 2023) (on appeal); *Kentucky Hemp Assoc. v. Quarles*, Case No.

21-CI-00836 (Boone Cir. Ct., Div. I, Feb. 28, 2022) (holding that state officials could

not enforce classification of delta-8 THC as a Schedule 1 controlled substance) (JA

272-290); *SASS Group, LLC v. State of Georgia*, Case No. 2022CV362007 (Fulton

Sup. Ct. April 15, 2022) (holding that Georgia could not define hemp according to

the concentration of THC isomers other than delta-9 THC) (JA 292-296).

The district court erred in holding that such preemption did not exist because

the Farm Act includes the following:

> No preemption. Nothing in this subsection preempts or limits any
> law of a State or Indian tribe that—(i) regulates the production
> of hemp; and (ii) is more stringent than this subchapter.

7 U.S.C. § 1639p(a)(3)(A) (the "Production Exception"). The district court inferred

that because Congress allowed a State to regulate "production" more stringently, that

allowed Virginia to more strictly define hemp through the Total THC Standard,

which limits the amount of THC in a product regardless of whether it is delta-9 THC

or another isomer. That is clearly erroneous because "production" as used in the

---

ostensibly health reasons would obstruct Congress' goal of banning all interstate
commerce in marijuana, leaving an unintended "gaping hole" in Congress' scheme,
*id.* at 22, allowing a State to ban a substance Congress had intended to be protected
in interstate commerce creates a similar loophole. The inevitable result would be a
patchwork of different definitions of hemp from State to State, which would pose
substantial obstacles to any semblance of free-flowing interstate commerce.

Farm Act strictly applies to *cultivation*. Under 7 U.S.C. § 1639p, States were granted "primary regulatory authority over the production of hemp" pursuant to a plan that each could submit to the Secretary of Agriculture for approval. Virginia submitted such a plan, which the Secretary of Agriculture approved, and which remains in effect to this day (the "Virginia Plan"). JA 205-229. The Virginia Plan, as consistent with the requirements of 7 U.S.C. § 1639p, only addresses cultivation of hemp—it makes no mention of the manufacturing of hemp products from raw hemp, or the sale, purchase, or transport of such hemp products. *See generally id.* (provisions of the Virginia Plan that expressly established "a registration program to allow a person to *grow* industrial hemp in the Commonwealth and requires that anyone seeking to *grow* industrial hemp in the Commonwealth apply to the Commissioner for a registration to do so[,]" and then set forth procedures "to monitor and randomly test industrial hemp, at the cost of the *grower*," and only tested such industrial hemp according to the federal standard) (emphases added). So while the Production Exception allowed Virginia to be more stringent regarding the *growing* of cannabis in its Virginia Plan, 7 U.S.C. § 1639p does not empower the States to restrict the manufacture, sale, purchase, consumption, or transport of hemp, as federal law limits its ambit solely to cultivation. *See* 7 U.S.C. § 1639p(a)(2)(A) (requiring State plans to include, for example, "relevant information regarding land on which hemp is produced"); *and see* 7 CFR § 990.3(a) (same). The district court's use of the

Production Exception to include the manufacture, possession, purchase, consumption, transport, and sale of hemp was clearly wrong under the Farm Act's use of the term "production."

The district court erroneously relied on the Seventh Circuit's decision in *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020), which held that Production Exception permitted a ban on smokeable hemp. *Id.* at 546. That decision similarly failed to acknowledge that the Farm Act clearly meant "production" to mean "cultivation," and not as any economic activity, as explained above. The *C.Y. Wholesale* Court further erred in holding that the express preemption clause in the note for 7 U.S.C. § 1639o over "transportation or shipment" should be read to only narrowly preempt State laws that affect just those items. *Id.* However, that reading runs afoul of the aforementioned Rule of Construction, which prohibits a reading of ***any*** portion of the Farm Act that allows the "prohibit[ion of] the interstate commerce of hemp [as defined in 7 U.S.C. § 1639o(1)] or hemp products." The *C.Y. Wholesale* decision is further undermined by its admission that "the district court may appropriate issue an injunction preventing Indiana from enforcing its law against those transporting smokable hemp through Indiana ***in interstate commerce***," 965 F.3d at 549 (emphasis added), but then failed to recognize that such interstate commerce, as defined in *Gonzales*, would extend to all incidents that "substantially affect" interstate commerce, including mere possession or consumption of hemp.

545 U.S. at 17. If hemp was entitled to move in interstate commerce, as the Rule of Construction mandates and *C.Y. Wholesale* admits, then no State could be empowered to ban any portion of that hemp as the Total THC Standard does.

In sum, the district court's reliance on *C.Y. Wholesale* was erroneous—the Farm Act expressly defines legal hemp and protects it in interstate commerce, and only permits the States to enact more stringent laws regarding the cultivation of hemp. Virginia was not permitted under the Production Exception to create a stricter Total THC Standard to redefine hemp and convert the Banned Products into illegal marijuana, as that would disrupt Congress' goal of creating a nationwide market for hemp and hemp products. Thus, this Court should hold that the Total THC Standard has been expressly preempted by the Farm Act, and thus the Appellants are likely to prevail on the merits of their challenge to those portions of SB 903.

### B. The Total THC Standard Is Preempted by the Farm Act under Field Preemption.

Field preemption prohibits state regulation of "conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona v. United States*, 567 U.S. 387, 399 (2012). It exists where "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (cleaned up). That legislative field need not be expansive—in *Pacific Gas and Electric Co. v. State Energy Res.*

*Conservation & Dev. Comm'n*, 461 U.S. 190 (1983), the U.S. Supreme Court held that while the Atomic Energy Act gave the states authority over the construction and operation of nuclear power plants and the regulation of the energy so produced, "the Federal Government maintains complete control of the safety and 'nuclear' aspects of energy generation" such that it "occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the States," such that "safety regulation of nuclear plants by States is forbidden." *Id.* at 212. In other words, field preemption exists where "Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law." *Northwest Cent. Pipeline Corp. v. State Corp. Comm'n*, 489 U.S. 493, 509 (1989) (*citing Rice*, 331 U.S. 218). "Statutory text and structure provide the most reliable guideposts in this inquiry." *PPL Energyplus, LLC v. Nazarian*, 753 F.3d 467, 474 (4th Cir. 2014) (*citing Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996)).

Here, the federal government occupied the field as to how legal hemp, as a new commodity in interstate commerce, was to be defined. Thus, the Total THC Standard intruded on that field, and is preempted. The district court erroneously relied on the Production Exception to hold that Congress had deliberately not occupied the field, JA 754-755, when, as noted above, the Production Exception only applies by its terms to cultivation, and not other economic activities—and certainly does not imply that the States could redefine hemp wholesale.

### C. The Total THC Standard Is Preempted by the Farm Act under Conflict Preemption.

Conflict preemption arises when the state law conflicts with a federal statute. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). "Assessing a conflict preemption claim required 'a two-step process of first ascertaining the construction of two statutes and then determining the constitutional question [of] whether they are in conflict.'" *H&R Block Eastern Enterprises, Inc. v. Raskin*, 591 F.3d 718, 723 (4th Cir. 2010) (*quoting Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981)). "In making this determination, a court 'should not seek out conflicts . . . where none clearly exists.'" *Id.* (*quoting College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 598 (4th Cir. 2005)).

A State law is an obstacle to federal law when it "interferes with the *methods* by which the federal statute was designed to reach [its] goal." *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 830 (4th Cir. 2010) (*quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103 (1992)) (emphasis in original). "A decision about [obstacle preemption] requires the court independently to consider national interests and their putative conflict with state interests . . . [it is] more an exercise of policy choices by a court than strict statutory construction." *Abbot v. American Cyanamid Co.*, 844 F.2d 1108, 1113 (4th Cir. 1988).

By excluding hemp as defined under 7 U.S.C. § 1639o(1) from the definition of marijuana in the CSA, Congress clearly decided it was in the national interest for

hemp *as so defined* to be legal throughout the United States. Under the Farm Bill, hemp was transformed into an agricultural commodity. Products of hemp were henceforth subject to the same regulations that other agricultural commodities were subject to by the Food and Drug Administration and the USDA.[6] The only involvement allowed to the States was the opportunity to regulate the cultivation of hemp within their respective borders, via the Production Exception—if a State chose not to submit a regulatory plan, then the federal government would impose its own. *See* 7 U.S.C. § 1639p & q.

By implementing the Total THC Standard, Virginia has converted a large segment of hemp from a legal product back into marijuana, an illegal Schedule 1 drug. *See* Va. Code §§ 4.1-600, 18.2-247, 18.2-248, 18.2-248.1, and 18.2-371.2. Not only that, but even for those who are permitted to grow industrial hemp under the Virginia Plan, they are now prohibited from selling their hemp to anyone, anywhere in the world, who might use their product to create anything that might violate the Total THC Standard—even if it is legal to create such a product in the buyer's

---

[6] *See* Amy Abernathy, Principal Deputy Commissioner of the FDA, *Hemp Production and the 2018 Farm Bill* (testimony before the U.S. Senate, July 25, 2019), https://www.fda.gov/news-events/congressional-testimony/hemp-production-and-2018-farm-bill-07252019 ("The 2018 Farm Bill explicitly preserved FDA's authorities over hemp products. Therefore, hemp products must meet any applicable FDA requirements and standards, just like any other FDA-regulated product. For example, FDA's existing authorities over foods, dietary supplements, human and veterinary drugs, and cosmetics apply to hemp products to the extent such hemp products fall within those categories."); *and see* 7 U.S.C. § 1639r(c).

location. Va. Code § 3.2-4116(C). Both laws clearly serve as an obstacle to Congress' intent of treating hemp, as it defined it, as an agricultural product, regulated under existing federal standards, and intended to be transported throughout the country without impediment. Virginia not only subjects a trucker moving hemp from, say, North Carolina to Maryland, through Virginia via Interstate 95, to criminal sanctions for doing so if the hemp s/he carries happens to violate the "total THC" standard, but it also seeks to export that standard outside of Virginia's borders by forbidding an industrial hemp grower from selling to a buyer in Maryland who wishes to manufacture a hemp product that complies with the federal standard but does not abide by the "total THC" standard, even though the buyer is compliant with Maryland law. The problem would only grow worse should additional states each pass conflicting standards for what is and isn't hemp, making every interstate transaction fraught with uncertainty over whether a given product might be legal or illegal. This is clearly not the simple, straightforward regime that Congress intended.

The district court against fell back on the Production Exception and the erroneous reasoning of *C.Y. Wholesale* to find there was no conflict preemption. JA 756-757. As noted above, the Production Exception cannot be used to grant the States power over more than just cultivation. The Seventh Circuit's reasoning is further flawed in that it attempted to liken hemp to a different psychoactive drug, salvia, in which Congress' "silence" as to that drug does not conflict with State laws

to criminalize it. 965 F.3d at 548; *and see Duke's Investments LLC v. Char*, 2022 WL 17128976, at *13-15 (D. Haw. 2022) (adopting *C.Y. Wholesale's* erroneous reasoning). The problem, of course, is that Congress has ***not*** been silent about hemp—it has expressly defined it and protected it in "interstate commerce." 7 U.S.C. § 1639o. The decisions in *C.Y. Wholesale* and *Duke's Investments* do not attempt to apply the Rule of Construction to their analysis, which is a fatal flaw to their reasoning that further counsels against their adoption by this Court.

The district court further determined that the Total THC Standard did not conflict with the interstate commerce of hemp intended by the Farm Act because Va. Code § 3.2-4113(A) made it lawful for "a grower, his agent, or a federally licensed hemp producer to grow, a handler or his agent to handle, or a processor his agent to process ***industrial hemp*** in the Commonwealth for any lawful purpose." JA 758 (emphasis added). Thus, such growers and processors of industrial hemp, as defined by federal law, could not be prosecuted for "possession" of such hemp under Virginia's marijuana laws. *Id.* The problem with the district court's position is rather obvious: Va. Code § 3.2-4113(A) only protects growers, processors, and their agents from prosecution for handling or shipping ***industrial hemp***, which is completely different from the hemp products that the Total THC Standard applies to. *See* Va. Code § 3.2-4112 (differentiating between "industrial hemp" that is defined under the federal standard, and "hemp products," "industrial hemp extracts" subject to the

Total THC Standard). The Banned Products are not industrial hemp—they are the hemp products and extracts that are subject to the Total THC Standard that were legal under the Farm Act but are considered illegal marijuana under Virginia law. Shipment of the Banned Products into and through Virginia is not protected under Va. Code § 3.2-4113(A). Thus, those who possess, transact, consume, or ship Banned Products in or through Virginia, including the Appellants, are subject to criminal sanction under Virginia law, notwithstanding Va. Code § 3.2-4113(A).

The result is obvious: a manufacturer like Franny's Farmacy, which manufactures federally-legal hemp products in North Carolina, and then seeks to ship those hemp products to its franchise in Connecticut, would normally be able to take the fastest route available—through Virginia—to accomplish that task. But now, Franny's Farmacy cannot ship the majority of their products, which are now Banned Products under the Total THC Standard, through Virginia because those Banned Products become illegal marijuana upon entering the Commonwealth—at least not without incurring a heavy additional cost either to detour around Virginia or accept the elevated risk of criminal sanction.[7] This is in direct conflict with the

---

[7] It must be noted that even though Franny's Farmacy does not ship its Banned Products itself, a shipping company that handles Franny's shipment would not be Franny's Farmacy's "agent" for the purposes of Va. Code § 3.2-4113(A), even if that statute extended to the Banned Products, which it does not. A shipping company at most would be a bailee of Franny's Farmacy's shipment, with the shipper having a duty to use ordinary care to protect that property. *Morris v. Hamilton*, 225 Va. 372, 302 S.E.2d 51, 53 (1983); Van Zile, Bailments and Carriers, 2d ed. (1890) § 128

clear intent of the Farm Act to create a single unobstructed nationwide market in hemp and hemp products, and thus is preempted.

### III. The District Court Erred in Holding that the Sales Restriction Does Not Violate the Dormant Commerce Clause.

The Sales Restriction violates the dormant Commerce Clause because it bars Virginia processors from selling industrial hemp to manufacturers who might use that commodity to make products that violate Virginia's Total THC Standard—since no other State has that standard, the result is that Virginia processors may not sell their commodity to out-of-state buyers. That clearly violates the dormant Commerce Clause, and the district court erred in holding otherwise, and erred in holding that Franny's Farmacy lacked standing to maintain that challenge.

The dormant Commerce Clause "implies a 'negative' or 'dormant' constraint on the power of the States to enact legislation that interferes with or burdens interstate commerce." *Brown v. Hovatter*, 561 F.3d 357, 362 (4th Cir. 2009) (*citing Dennis v. Higgins*, 498 U.S. 439, 447 (1991)). That dormant Commerce Clause serves to "rebuff[ ] attempts of states to advance their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state, while generally supporting their right to impose even burdensome regulations in the

_____

("The bailee does not stand in the place of the bailor; he does not represent him in such a relation as would render the bailor liable for his negligent acts, or for the negligent acts of his servants or agents[.]").

interest of local health and safety." *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949). "Thus, not all economic harms or anticompetitive choices are remedied through the application of the dormant Commerce Clause, but rather only those that *unjustifiably burden* interstate commerce." *Brown*, 561 F.3d at 363 (emphasis in original).

At the "very core" of the dormant Commerce Clause is an "antidiscrimination principle" that "prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross*, 598 U.S. ___, p.7 (2023) (Gorsuch, J.) (cleaned up, quotations omitted). "If there is no discrimination, a court will consider on the second tier whether the state laws 'unjustifiably . . . burden the interstate flow of articles of commerce.'" *Ass'n for Accessible Medicines v. Frosh*, 887 F.3d 664, 668 (4th Cir. 2018) (*quoting Oregon Waste Sys. Inc. v. Dept. of Environmental Quality of Oregon*, 511 U.S. 93, 98 (1994)). That tier employs the *Pike* test, "under which the challenged law 'will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" *Id.* (*quoting Pike v Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). The *Pike* test requires a plaintiff to plead facts plausibly showing that a challenged law imposes "substantial burden on interstate commerce" followed by a "showing that those burdens clearly outweigh the benefits of a state

or local practice." *Nat'l Pork Producers Council*, 598 U.S. at p.3 (Sotomayor, J. concurring in part) and p.3 (Roberts, C.J., concurring in part and dissenting in part).[8]

The Sales Restriction states: "A processor shall not sell industrial hemp or a substance containing an industrial hemp extract, as defined in § 3.2-5145.1, to a person if the processor knows or has reason to know that such person will use the industrial hemp or substance containing an industrial hemp extract in a substance that [violates the 'total THC' standard]." Va. Code § 3.2-4116(C). Since no other State (or even country) has adopted Virginia's "total THC" standard, the obvious result of the Sales Restriction is that Virginia processors will not be able to sell industrial hemp or industrial hemp extracts to anybody outside Virginia, including Franny's Farmacy. That means that out-of-state buyers like Franny's Farmacy— which uses those products to create their hemp products, JA 268-269—will have fewer options for buying industrial hemp and industrial hemp extracts, resulting in higher prices for those buyers from the reduced supply. Because of the Sales Restriction, only Virginia buyers subject to the Total THC Standard can buy from Virginia processors while still being able to purchase from out-of-state processors— the exact kind of economic discrimination that the dormant Commerce Clause is meant to prohibit.

---

[8] The fractured opinion in *Nat'l Pork Producers Council* can be difficult to parse, but it is clear that a majority of the justices agreed to apply *Pike* in this fashion.

The district court, once again, erroneously relied on the Production Exception to excuse the Sales Restriction, even though the former, as already explained above, only applies by its plain terms to cultivation and not subsequent transactions. The district court then noted that the Sales Restriction could only be enforced against Virginia processors, and not out-of-state buyers—even though the dormant Commerce Clause does not distinguish based on which side of a transaction is being prohibited from engaging in commerce. *See Nat'l Pork Producers Council*, 598 U.S. ___, p.7 (maj. op.) (the "very core" of the "antidiscrimination principle" behind the dormant Commerce Clause is to prohibit "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."). There is no dispute that the Sales Restriction, on its face, prohibits Franny's Farmacy, an out-of-state manufacturer of Banned Products, from being able to purchase industrial hemp or extracts from a Virginia processor. JA 268-269. That is unquestionably a burden on Franny's Farmacy, which has been denied access to the entire Virginia market for industrial hemp and its extracts. Finally, the district court claimed no facts had been alleged to demonstrate economic protectionism, when it was undisputed that the effect of the Sales Restriction was to only permit Virginia buyers to be able to buy Virginia industrial hemp, thus denying out-of-state buyers like Franny's Farmacy from being able to purchase that commodity to use for its hemp products. *Id.*

The district court's reliance on *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978) was misplaced. That case concerned a Maryland law prohibiting refiners of petroleum products from also operating a retail service station in the State. The evidence in the record showed that at least three refiners would stop selling gas in Maryland as a result. The Court found that insufficient to establish an impermissible burden on interstate commerce because "there is no reason to assume that their share of the entire supply will not be promptly replaced by other interstate refiners." *Id.* at 127. In other words, it was not enough where only a few suppliers would change. Here, though, there is no question that the ***entire*** Virginia market for industrial hemp and industrial hemp extracts is being denied to anyone, anywhere else in the world, unless they adopt Virginia's "total THC" standard. The Sales Restriction is akin to Maryland issuing a law mandating that retail gas stations in Maryland can only be owned by companies based in Maryland—a far more obstructive situation that clearly disfavors out-of-state companies, just like here.

Moreover, there is an "extraterritorial reach" to the Sales Restriction, in that if an out-of-state buyer like Franny's Farmacy wishes to purchase industrial hemp from a Virginia processor, it may only manufacture hemp products that comply with Virginia law. *Frosh*, 887 F.3d at 669 (*quoting Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 528 (1935)). Since no other State follows Virginia's Total THC Standard, the Sales Restriction effectively seeks to enforce Virginia law outside the

Commonwealth. In addition, the district court did not identify any in-state interest that the Sales Restriction achieved that the Total THC Standard already did not— nor did the Appellees. *See Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) (invalidating a law that has connections to transactions in the State but did not promote "legitimate local interests"). The net effect of the Sales Restriction is to deny out-of-state manufacturers of Banned Products access to Virginia industrial hemp to use to make those products—products that already could not be sold or consumed in Virginia. The result would only mean fewer Banned Products being sold outside of Virginia. It serves no Virginia interest to deny citizens of other States access to Banned Products. *Id.* ("the State has no legitimate interest in protecting nonresident" transactors).

For these reasons, the district court clearly erred in holding that Appellants were not likely to succeed on the merits of their dormant Commerce Clause challenge to the Sales Restriction, and this Court should accordingly reverse.

## IV. The District Court Erred in Holding that the Appellants Were Not Irreparably Harmed by SB 903.

The district court held that the Appellants were not irreparably harmed for two reasons: (1) Appellants' unrebutted allegations of irreparable harm were "undercut by the delay which they undertook filing this civil action to enjoin enforcement of SB 903" because they filed the case exactly two months after SB 903 went into effect; and (2) Appellants did not face potential criminal liability because of Va.

Code § 3.2-4113(A). Both of those rulings constitute an abuse of discretion. *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 103 (4th Cir. 2022).

There must be a "sufficient immediacy and reality" of irreparable harm to satisfy this prong of the *Winter* factors, as opposed to a mere prospect of future harm. *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (*quoting Golden v. Zwickler*, 394 U.S. 103, 109 (1969) (threat of injury must be both "real and immediate," not "conjectural" or "hypothetical")). It must be "likely" that the asserted harm will occur if no injunction is issued. *Aslanturk v. Hott*, 459 F. Supp. 3d 681, 700 (E.D. Va. 2020); *and see Emmett v. Johnson*, 489 F. Supp. 2d 543, 550 (E.D. Va. 2007) (when a court "cannot say with confidence that the harm is more likely than not to occur at all," the movant has failed to meet their burden) (*quoting In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 530 (4th Cir. 2003)).

First, the district court did not dispute, nor did Appellees, that the Appellants' claims of irreparable harm were valid. Ms. Lane's claim regarding her use of Banned Products to treat her arthritis was unrebutted. JA 303. The claims by NOVA Hemp and Franny's Farmacy that the Total THC Standard converted the vast majority of their products into Banned Products treated as illegal marijuana in Virginia was unrebutted. *Id.* 267, 299. Aside from mere speculation offered by the Appellees,[9] the

---

[9] Weighing irreparable harm requires a consideration of the "evidence" and "facts," not mere speculation. *Pro-Concepts, LLC v. Resh*, 2013 U.S. Dist. LEXIS 151714, *52 (E.D. Va. Oct. 22, 2013).

catastrophic economic harm caused to NOVA Hemp and Franny's Farmacy by having the bulk of their products made illegal is obvious and not refuted. *Id.* 268-269, 299-300; and see *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186 (2d Cir. 1995) ("Major disruption of a business can be as harmful as its termination and thereby constitute irreparable injury."). Nor was it rebutted that the harm to the business of NOVA Hemp and Franny's Farmacy could not be later recovered against the Commonwealth that enacted the unconstitutional statutes in question. *See Ohio Oil Co. v. Conway*, 279 U.S. 813, 814 (1929) (holding that a company suffers irreparable harm from paying an allegedly unconstitutional tax where there was "no remedy whereby restitution of the money so paid may be enforced"). Appellees offered no rebuttal to the economic studies showing that over two-thirds of Virginia's hemp business were either out of business or would be soon because of SB 903. JA 329-345. And that Virginia businesses were already being fined[10] for selling products that violated the Total THC Standard—"complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part and concurring in the judgment). And

---

[10] *See* Graham Moomaw, *Hemp retailers face big fines as Va.'s tougher THC law takes effect*, *Virginia Mercury*, https://www.nvdaily.com/hemp-retailers-face-big-fines-as-va-s-tougher-thc-law-takes-effect/article_ffdf29ee-191c-5474-be49-314126a1d8ae.html (Aug. 6, 2023) (last visited December 5, 2023).

then there were the unrebutted increased shipping costs that Franny's Farmacy faces when trying to ship its Banned Products from North Carolina to Connecticut, either by forcing the shipper to detour around Virginia completely to avoid potential sanction, or raising costs to account for the increased risk of carrying marijuana through the Commonwealth. JA 267-268. And finally, as noted above, there was the harm incurred by Franny's Farmacy by not being allowed to purchase Virginia industrial hemp to use to manufacture its products as a result of the Sales Restriction. *Id.* 268-269. All of this unrebutted evidence clearly shows that the Appellants suffered irreparable harm as a result of SB 903.

The district court also failed to note that the harm being suffered by the Appellants is ongoing as SB 903 remains in effect, with the imminence of future harm, which constitutes the type of harm for which injunctive relief is appropriate. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108-09 (1998).

In the face of all of that evidence, the district court nevertheless insisted that the Appellants had not been irreparably harmed, largely because they filed their suit two months after SB 903 went into effect. JA 765. The timeline was as follows:

SB 903 First Passed by Legislature: February 16, 2023[11]

---

[11] The district court's assertion that SB 903 was "passed on February 7, 2023" omits that only the Virginia Senate passed SB 903 on that date—the House did not pass the bill until February 16, 2023. *See*: https://lis.virginia.gov/cgi-bin/legp604.exe?231+sum+SB903 (containing full timeline) (last visited December 5, 2023) *and see* JA 400-401.

SB 903 Finally Passed by Legislature: April 12, 2023[12]
SB 903 Went into Effect: July 1, 2023
Instant Case Filed with Motion for Preliminary Injunction: September 1, 2023

Thus, Appellants filed their suit less than five months after SB 903 was finally signed, and exactly two months after it went into effect. The district court decided that delay was enough to override all of the undisputed irreparable harm noted by the Appellants. That was an abuse of discretion. While delay in seeking a preliminary injunction 'indicate[s] an absence of the kind of irreparable harm required to support a preliminary injunction[,]" *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (denying relief to a group that filed their challenge nine months after an administrative decision was entered), "a plaintiff need not challenge an illegal act immediately after it happens; it may wait until it 'can estimate whether' the act threatens it with irreparable harm." *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690, 718 (4th Cir. 2021) (regarding a divestiture claim).

There is no case law mandating that a challenge to a new law must be filed on the day it goes into effect or else injunctive relief is waived—indeed, had the Appellants filed on July 1, 2023, it would have raised the natural counterargument that their harm is speculative because Appellants had not waited until the new law

---

[12]  See: https://lis.virginia.gov/cgi-bin/legp604.exe?231+sum+SB903 (containing full timeline) (last visited December 5, 2023). The Governor offered an amendment to SB 903 on March 28, 2023, JA 436, but the Senate and House did not adopt that amendment and sign the final bill until April 12, 2023.

was enforced against them. Here, the Appellants were uncertain how Virginia would proceed to enforce SB 903. JA 730. Under *Steves & Sons*, they were afforded some time after SB 903 went into effect to determine that. When Virginia began enforcement in August of 2023, *see* note 10, *supra*, Appellants moved quickly to file less than a month later. That cannot be considered inordinate delay in the face of ongoing, detailed, and catastrophic irreparable harm as was shown here. Nor have the Appellants argued that the delay was "unreasonable" or caused them any "prejudice." *Independent Bankers Ass'n of America v. Heimann*, 627 F.2d 486, 488 (D.C. Cir. 1980). The district court did not cite to any case barring the availability of relief in the timeline presented, and it was an abuse of discretion in this case to so hold.

The district court's other position, that the Appellants did not face criminal liability under SB 903, fails for the reasons noted above, namely that the plain language of Va. Code § 3.2-4113(A) only protects certain people handling *industrial hemp* from criminal sanction—it does nothing to protect the Appellants from criminal sanction for possessing, transacting, shipping, or consuming the Banned Products, all of which constitute illegal marijuana under Virginia law. *See* Va. Code §§ 4.1-600, 18.2-247(D), 18.2-248, 18.2-248.1, 18.2-371.2, 54.1-3401, 54.1-3408. If the Total THC Standard is illegal as argued above, then it is obvious that the Appellants have been harmed by being denied access to and the right to transact in

those products. *See United States v. Goodwin*, 457 U.S. 368, 372 (1982) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.").

> **V.     The District Court Erred in Holding that the Balance of the Equities and the Public Interest Did Not Weigh in Favor of Injunctive Relief.**

As noted above, the last two Winter factors merge when an injunction is sought against the government. *Nken*, 556 U.S. at 435. In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 524 (1987). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Where a state law conflicts with the purposes of a federal law, the public interest favors the latter. *See Seaman v. Virginia*, 593 F. Supp. 3d 293, 328 (W.D. Va. 2022) (while "States have an interest in seeing that their statutes are given effect . . . the Supremacy Clause provides that federal law is supreme in the event of a conflict, and therefore any State interest in enforcement of its laws must comparably give way when they conflict with federal law."); *and see R.K. v. Lee*, 575 F. Supp. 3d 957, 992-93 (M.D. Tenn. 2021) (issuing injunctive relief against Tennessee law that conflicted with the ADA).

The district court abused its discretion in finding that the balance of the equities and the public interest weighed against granting an injunction, for several reasons.

First, and most importantly, the district court erroneously concluded that Appellants were not likely to prevail on the merits of their claims against the Total THC Standard and the Sales Restriction. JA 766. Because both of those portions of SB 903 are unconstitutional for the reasons set forth above, the public interest lies in favor of enforcing the federal law over a State law due to the Supremacy Clause.

Second, the district court opined that Virginia's "political and social welfare judgments" must be deferred to, while ignoring the fact that Congress had already made its own political and social welfare judgments in defining hemp and creating an interstate market for hemp solely according to its delta-9 THC concentration, and it applied those judgments to the entire country, not just Virginia. The district court failed to defer to Congress' judgment, which was error.

Third, while protecting children from potentially intoxicating substances is in the public interest, the district court did not explain how existing regulations not challenged in this suit—including packaging requirement and age restrictions— were not sufficient to further that interest, like is already in place for other legal intoxicating substances like alcohol and medical marijuana. *See* Va. Code §§ 3.2-4123(A)(1) (requirement of "child-resistant packaging"); (A)(2) (requiring label on

THC products stating that "the product may not be sold to persons younger than 21 years of age"); and (B) (prohibiting sale of "a regulated hemp product that depicts or is in the shape of a human, animal, vehicle, or fruit").

Finally, neither the Appellees nor the district court explained how the equities or the public interest of Virginia citizens weighed in favor of the Sales Restriction, nor can they, as it advances none.

In sum, the district court abused its discretion in holding that the balance of the equities and the public interest weighed against the grant of injunctive relief enjoining SB 903 as requested by the Appellants.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the October 30, 2023 Order of the district court and instruct the district court to enter a preliminary injunction enjoining the enforcement of Virginia's "Total THC Standard" and the "Sales Restriction" during the pendency of the litigation, along with any other relief this Court deems just and necessary.

## REQUEST FOR ORAL ARGUMENT

Appellants request the opportunity to present oral argument on this matter.

Date: December 7, 2023

Respectfully submitted,

/s/ James N. Markels
James N. Markels (VSB #68399)
jnm@cwattorney.com
Thomas Westberg-Croessmann
(VSB #88086)
twc@cwattorney.com
CROESSMANN & WESTBERG, P.C.
8000 Towers Crescent Drive
Suite 1575
Tysons, VA 22182
Phone: (703) 483-3550
Facsimile: (703) 349-3414

## CERTIFICATION OF COMPLIANCE

Appellants certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 10,892 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). Appellants further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ James N. Markels
James N. Markels (VSB #68399)
Attorney for Appellants

# CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of December, 2023, a true copy of this

Opening Brief of Appellants was electronically filed via the CM/ECF system,

which will deliver an electronic copy thereof to all counsel of record.

*/s/ James N. Markels*
James N. Markels (VSB #68399)
CROESSMANN & WESTBERG, P.C.
8000 Towers Crescent Drive
Suite 1575
Tysons, VA 22182
Phone: (703) 483-3550
Facsimile: (703) 349-3414
Email: jnm@cwattorney.com
*Attorney for Appellants*