No. 23-2192

────────────────────

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

────────────────────

NORTHERN VIRGINIA HEMP AND AGRICULTURE LLC, ET AL.,

*Plaintiffs-Appellants*,

v.

THE COMMONWEALTH OF VIRGINIA, ET AL.,

*Defendants-Appellees*.

────────────────────

On Appeal from the United States District Court
for the Eastern District of Virginia

────────────────────

**RESPONSE BRIEF OF APPELLEES**

────────────────────

JASON S. MIYARES
  *Attorney General*
STEVEN G. POPPS
  *Deputy Attorney General*
CAL BROWN
  *Senior Assistant Attorney General*

ANDREW N. FERGUSON
  *Solicitor General*
ERIKA L. MALEY
  *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile

*Counsel for Defendants-Appellees*
January 26, 2024

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ......................................................... iii

INTRODUCTION ......................................................................... 1

ISSUES PRESENTED ................................................................... 4

STATEMENT OF FACTS ............................................................. 5

    I.    Statutory and Regulatory Background ................................. 5

        A.    The Controlled Substances Act and the 2018 Farm Act ... 5

        B.    Virginia law regarding THC products ............................. 9

    II.    Procedural History ................................................................. 15

STANDARD OF REVIEW ........................................................... 21

SUMMARY OF ARGUMENT ....................................................... 22

ARGUMENT ................................................................................. 24

    I.    Plaintiffs lack standing to assert several of their claims ....... 24

        A.    Plaintiffs lack standing to claim that the Farm Act preempts application of SB 903 to transportation of hemp products through Virginia ................................................. 24

        B.    Plaintiffs lack standing to challenge Va. Code § 3.2-4116(C) ................................................................. 27

    II.    The district court correctly held that Plaintiffs failed to show they are likely to succeed on the merits ........................ 31

        A.    Plaintiffs are unlikely to succeed on their claim that the Farm Act expressly preempts Virginia's Total THC standard ........................................................................... 31

1. The Farm Act does not expressly preempt SB 903 ..... 31

2. Plaintiffs' arguments to the contrary are not likely to succeed ................................................................ 37

B. Plaintiffs' implied preemption claims are also not likely to succeed on the merits ....................................... 42

1. Plaintiffs' claim that the Farm Act occupies the field of hemp regulation is meritless ...................................... 42

2. Plaintiffs' conflict preemption claim is also not likely to succeed on the merits .................................... 46

C. Plaintiffs are not likely to succeed on their claims that SB 903 violates the Dormant Commerce Clause .................. 50

III. The remaining preliminary injunction factors weigh against relief ............................................................ 57

A. The district court did not abuse its discretion in holding that Plaintiffs would not suffer irreparable harm in the absence of injunctive relief .............................................. 57

B. The balance of equities weighs against a preliminary injunction, which would not be in the public interest ..... 63

CONCLUSION ...................................................................... 65

CERTIFICATE OF COMPLIANCE ....................................... 67

CERTIFICATE OF SERVICE .............................................. 68

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Aggarao v. MOL Ship Mgmt. Co.*,
  675 F.3d 355 (4th Cir. 2012)..........................................................21

*Association for Accessible Medicines v. Frosh*,
  887 F.3d 664 (4th Cir. 2018)..........................................................55

*Bio Gen, LLC v. Sanders*,
  __ F. Supp. 3d __, 2023 WL 5804185 (E.D. Ark. Sept. 7,
  2023)..............................................................................................34

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
  489 U.S. 141 (1989)........................................................................48

*Brown v. Hovatter*,
  561 F.3d 357 (4th Cir. 2009)..........................................................51

*C.Y. Wholesale, Inc. v. Holcomb*,
  965 F.3d 541 (7th Cir. 2020).................................................. *passim*

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am.,
  Inc.*,
  492 F.3d 484 (4th Cir. 2007)..........................................................54

*Chamber of Commerce of U.S. v. Whiting*,
  563 U.S. 582 (2011)....................................................... 31, 33, 35, 47

*Cipollone v. Liggett Group, Inc.*,
  505 U.S. 504 (1992)................................................................. 42, 44

*College Loan Corp. v. SLM Corp.*,
  396 F.3d 588 (4th Cir. 2005)..........................................................48

*Colon Health Centers of Am., LLC v. Hazel*,
  813 F.3d 145 (4th Cir. 2016)............................................. 54, 55, 56

*Common Cause v. Deptartment of Energy,*
702 F.2d 245 (D.C.Cir.1983) ............................................................ 30

*CSX Transp., Inc. v. Easterwood,*
507 U.S. 658 (1993) ........................................................................ 31

*Di Biase v. SPX Corp.,*
872 F.3d 224 (4th Cir. 2017) ............................................. 21, 22, 58, 60

*Direx Israel, Ltd. v. Breakthrough Med. Corp.,*
952 F.2d 802 (4th Cir. 1991) .......................................................... 58

*Duke's Invs. LLC v. Char,*
No. 22-00385, 2022 WL 17128976 (D. Haw. Nov. 22, 2022) .. 34, 36, 49

*Florida Lime & Avocado Growers, Inc. v. Paul,*
373 U.S. 132 (1963) ........................................................................ 43

*Frank Krasner Enters., Ltd. v. Montgomery County,*
401 F.3d 230 (4th Cir. 2005) .......................................................... 29

*Geier v. American Honda Motor Co.,*
529 U.S. 861 (2000) .................................................................. 35, 38

*Gonzalez v. Raich,*
545 U.S. 1 (2005) ............................................................................ 38

*H&R Block E. Enters., Inc. v. Raskin,*
591 F.3d 718 (4th Cir. 2010) ...................................................... *passim*

*Hibbs v. Winn,*
542 U.S. 88 (2004) .......................................................................... 38

*Hines v. Davidowitz,*
312 U.S. 52 (1941) .......................................................................... 47

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.,*
17 F.3d 691 (4th Cir. 1994) ............................................................ 60

*Jones v. Niagara Frontier Transp. Auth.,*
836 F.2d 731 (2d Cir.1987) ............................................................ 62

iv

*Kansas v. Garcia*,
  589 U.S. \_\_\_\_, 140 S. Ct. 791 (2020) ........................................ *passim*

*Kelly v. R.S. Jones & Associates*,
  406 S.E.2d 34 (Va. 1991) ...................................................... 54

*Lane v. Holder*,
  703 F.3d 668 (4th Cir. 2012) .......................................... 26, 28, 29, 30

*McCoy v. United States*,
  707 F.3d 184 (2d Cir. 2013) .................................................. 6

*Moreno v. Baskerville*,
  452 S.E.2d 653 (Va. 1995) .............................................. 54, 57

*National Ass'n of Home Builders v. Defenders of Wildlife*,
  551 U.S. 644 (2007) ........................................................... 38

*National Pork Producers Council v. Ross*,
  598 U.S. 356 (2023) (opinion of Gorsuch, J.) .............................. 51, 53

*Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*,
  992 F.2d 430 (2d Cir. 1993) ................................................. 62

*New York Dep't of Social Services v. Dublino*,
  413 U.S. 405 (1973) ........................................................... 43

*Nken v. Holder*,
  556 U.S. 418,435 (2009) ..................................................... 63

*Oregon Waste Sys. Inc. v. Department of Env't Quality of Or.*,
  511 U.S. 93 (1994) ............................................................. 51

*Pacific Gas & Electric Company v. State Energy Resource Conservation & Development Commission*,
  461 U.S. 190 (1983) ........................................................... 45

*Pashby v. Delia*,
  709 F.3d 307 (4th Cir. 2013) ............................................... 64

*Payroll Express Corp. v. Aetna Casualty & Sur. Co.*,
    659 F.2d 285 (2d Cir.1981) ................................................................. 62

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ................................................................ 19, 54, 55

*Pinney v. Nokia, Inc.*,
    402 F.3d 430 (4th Cir. 2005) .............................................................. 35

*Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*,
    872 F.2d 75 (4th Cir. 1989) ................................................................ 58

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218 (1947) .................................................................... 32, 36

*Sampson v. Murray*,
    415 U.S. 61 (1974) ..................................................................... 60, 62

*Sandlands C&D LLC v. Cty. of Horry*,
    737 F.3d 45 (4th Cir.2013) ................................................................ 54

*Scott's Co. v. United Indus. Co.*,
    315 F.3d 264 (4th Cir. 2002) .............................................................. 57

*Sierra Club v. United States Army Corps of Eng'rs*,
    981 F.3d 251 (4th Cir. 2020) .............................................................. 21

*Smith Setzer & Sons, Inc. v. South Carolina Procurement
    Rev. Panel*,
    20 F.3d 1311 (4th Cir. 1994) .............................................................. 61

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .................................................................... 24, 27

*United States v. Alvarado*,
    440 F.3d 191 (4th Cir. 2006) .......................................................... 39, 45

*United States v. Guerrero*,
    910 F.3d 72 (2d Cir. 2018) ................................................................. 6

*United States v. Jae Gab Kim*,
    449 F.3d 933 (9th Cir. 2006) .............................................................. 56

*United States v. Perry,*
  583 F. App'x 90 (4th Cir. 2014)........................................................56

*United States v. South Carolina,*
  720 F.3d 518 (4th Cir. 2013) ..........................................................37

*Virginia Uranium, Inc. v. Warren,*
  139 S. Ct. 1894 (2019) .....................................................................48

*Watson v. Buck,*
  313 U.S. 387 (1941)..........................................................................59

*Wetzel v. Edwards,*
  635 F.2d 283 (4th Cir. 1980) ..........................................................21

*Winter v. National Resources Defense Council, Inc.,*
  555 U.S. 7 (2008)......................................................17, 21, 31, 58

*Wyeth v. Levine,*
  555 U.S. 555 (2009).................................................................47, 48

**Statutes**

7 U.S.C. § 1639o ............................................................... *passim*

7 U.S.C. § 1639p ............................................................... *passim*

7 U.S.C. § 1639q ........................................................8, 26, 36

7 U.S.C. § 1639r.......................................................................36

7 U.S.C. § 5940 ..........................................................................7

21 U.S.C. § 802 .......................................................................5, 7

21 U.S.C. § 812 ..........................................................................8

21 U.S.C. § 823 ..........................................................................5

21 U.S.C. § 841 .....................................................................5, 56

21 U.S.C. § 903 ..........................................................6, 39, 43, 49

Agriculture Act of 2014, 128 Stat 649 .................................................. 7, 41

Agriculture Improvement Act of 2018, Pub. L. No. 115-334, §
    12619 (Dec. 20, 2018) .......................................................... 7, 44

Va. Code § 3.2-4112 ........................................................ 9, 12, 13, 41, 51

Va. Code § 3.2-4113 ........................................................ 3, 13, 17, 40, 41

Va. Code § 3.2-4116 ........................................................................ *passim*

Va. Code § 3.2-4118 ...................................................................... 14, 17, 28

Va. Code § 3.2-4123 ............................................................................ 14, 46

Va. Code § 18.2-247 ............................................................................... 9, 12

Va. Code § 18.2-248.1 ................................................................. 7, 9, 13, 59

Va. Code § 18.2-251.1 ................................................................................. 7

## Other Authorities

11 A C. Wright, A. Miller, & M. Kane, Federal Practice and
    Procedure § 2948.1 (2d ed.1995) ............................................. 61

Agricultural Marketing Service, *Status of State and Tribal
    Hemp Production Plans for USDA Approval*,
    http://tinyurl.com/huaaa5yd (last accessed Jan. 26, 2024) ............... 26

The American Heritage Dictionary of the English Language,
    Fifth Edition (2022), http://tinyurl.com/3j2yncm6 ............................ 32

Bruan, Uniform Controlled Substances Act of 1990, 13
    Campbell L. Rev. 365 (1990) ................................................................ 6

Cambridge Dictionary, http://tinyurl.com/38wz4kmf ............................ 32

Merriam-Webster Dictionary, http://tinyurl.com/4daurnwk; ................. 32

*Public Search Tool*, Agricultural Marketing Service, U.S.
    Department of Agriculture, http://tinyurl.com/ydzkb7x4 .................. 27

Senate Bill No. 903, 2023................................................................ *passim*

*State Enactment of the Uniform Controlled Substances Act*,
    1 Uelmen and Haddox, Drug Abuse and the Law
    Sourcebook § 1:30................................................................................ 6

## INTRODUCTION

The district court did not abuse its discretion in denying Plaintiffs' motion for a preliminary injunction. Plaintiffs satisfy none of the preliminary injunction factors. Their claims that the Agriculture Improvement Act of 2018 (the Farm Act), Pub. L. No. 115-334, preempts Virginia law lack merit. The Farm Act removed "hemp" with low concentrations of delta-9 tetrahydrocannabinol (THC) from the federal definition of "marijuana," thus decriminalizing it under federal law. The Farm Act did *not* bar States from prohibiting the sale of products federally defined as "hemp." It is instead consistent with Congress's decades-old policy of permitting the States to criminalize the sale of controlled substances that federal law does not criminalize.

The Virginia law that Plaintiffs challenge is a core exercise of Virginia's police power to protect the health and safety of its citizens. When the Farm Act was passed, delta-9 THC was the only psychoactive compound that occurs naturally in cannabis at intoxicating levels. But the Act created a loophole which businesses soon exploited by synthesizing cannabis products that arguably satisfied the new federal definition of "hemp" but contained high levels of other psychoactive

compounds—particularly delta-8 THC—that do not naturally occur in cannabis at intoxicating levels. These products created a public health crisis in Virginia. Between 2018 and 2022, Virginia poison control centers saw a 2,300% increase in THC-related calls. JA0446. The rates of delta-8 THC poisonings in young children were especially alarming, including hospitalization and death of children who overdosed on delta-8 THC products after mistaking them for candy. JA0445–46; JA0458–59; JA0462. Virginia therefore amended state law to prohibit the sale of cannabis products unless they have a low total level of THC, not just a low level of delta-9 THC. Senate Bill No. 903, 2023 Gen. Assemb., Reg. Sess. (Va.) ("SB 903").

The Farm Act does not prohibit Virginia from adopting its own, more stringent, definition of hemp. To the contrary, its savings clause provides that "[n]othing in this subsection preempts or limits any law of a State" that "regulates the production of hemp," expressly reserving the States' authority to impose regulations that are "more stringent" than federal law. 7 U.S.C. § 1639p(a)(3)(A). And its narrow express preemption clause applies only to the "shipment" of hemp "through" a State, and only where that hemp was produced in accordance with federal law. 7 U.S.C.

2

§ 1639o note. Further, Virginia law has a safe harbor for licensed producers acting in compliance with the Farm Act who are not selling the products in Virginia. Va. Code § 3.2-4113. Because the Virginia law does not conflict with the Farm Act and does not discriminate against out-of-state actors, Plaintiffs are not likely to succeed on their preemption or Dormant Commerce Clause claims.

The district court did not abuse its discretion in holding that the remaining factors also weigh against a preliminary injunction. Plaintiffs failed to meet their burden to show that they will be irreparably harmed without preliminary relief. Their arguments that they are exposed to criminal enforcement are unsupported. And their allegations of irreparable injury are undercut by their choice to delay their suit for months after the law passed. The balance of the equities and the public interest also weigh strongly against a preliminary injunction. Virginia's interest in protecting the health and safety of young children and other vulnerable populations outweighs Plaintiffs' desire to continue profiting from the sale of dangerous delta-8 THC products. The Court should affirm.

## ISSUES PRESENTED

1.    Whether Plaintiffs lack standing to challenge Va. Code § 3.2-4116(C), and to claim that Virginia law is preempted on the basis that it prohibits shipment of federally compliant hemp products through Virginia.

2.    Whether the district court abused its discretion in holding that Plaintiffs were not likely to succeed on the merits of their claim that federal law preempts SB 903.

3.    Whether the district court abused its discretion in holding that Plaintiffs were not likely to succeed on the merits of their Dormant Commerce Clause claim where SB 903 does not discriminate against out-of-state actors.

4.    Whether the district court abused its discretion in holding that Plaintiffs failed to show that they would suffer irreparable harm or that the balance of equities and public interest weighed in favor of an injunction, particularly given the serious public health harms caused by delta-8 THC products.

## STATEMENT OF FACTS

I. **Statutory and Regulatory Background**

### A. The Controlled Substances Act and the 2018 Farm Act

In 1970, Congress passed the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq. The CSA makes manufacturing, distributing, or possessing a controlled substance a federal crime. 21 U.S.C. § 841(a). The CSA classifies marijuana as a Schedule I drug, which is the most restrictive of its five schedules. See, e.g., 21 U.S.C. § 823 (registration requirements); *id.* § 829 (prescription requirements); *id.* §§ 841-842 (prohibitions and penalties). Prior to the Farm Act, the CSA defined marijuana as "all parts of the plant *Cannabis sativa L.*, whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16)(A).

The CSA does not include an express preemption clause. To the contrary, it states: "No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive

5

conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together." 21 U.S.C. § 903.

Since the passage of the CSA, every State has continued to enforce laws concerning controlled substances. See *State Enactment of the Uniform Controlled Substances Act*, 1 Uelmen and Haddox, Drug Abuse and the Law Sourcebook § 1:30; Bruan, Uniform Controlled Substances Act of 1990, 13 Campbell L. Rev. 365 (1990) (providing an overview of the UCSA and its 1990 revisions). These state laws frequently differ from the CSA in the substances that they prohibit. For instance, some States criminalize the possession or sale of substances that the CSA does not reach. See, *e.g.*, *United States v. Guerrero*, 910 F.3d 72, 75 (2d Cir. 2018) (explaining that Arizona law criminalized benzylfentanyl and thenylfentanyl, which are not on federal schedules); *McCoy v. United States*, 707 F.3d 184, 187 (2d Cir. 2013) (same with respect to Connecticut law).

States also sometimes decline to prohibit the possession or sale of substances that are illegal under the CSA. For instance, Virginia law does not criminalize the possession of marijuana in some circumstances—such as for personal use—that the CSA does criminalize

6

it. See Va. Code § 18.2-248.1 (addressing personal use); Va. Code § 18.2-251.1 (addressing "valid prescription issued by a medical doctor").

In the Agricultural Act of 2014, Congress established the Hemp Research Pilot Program, 128 Stat 649. It allowed "industrial hemp" to be cultivated for research purposes by certain educational institutions and state departments of agriculture. 128 Stat 649. The law defined "industrial hemp" as "the plant *Cannabis sativa L.* . . . with a Delta-9 tetrahydrocannabinol ('THC') concentration of not more than 0.3 percent." 7 U.S.C. § 5940(a)(2). At the time, delta-9 THC was the compound "known to induce the intoxicating effect from smoking or eating processed marijuana," and 0.3 percent was considered to be the level at which a marijuana product would not be intoxicating. JA0105; see JA0490.

In the Agriculture Improvement Act of 2018 (the Farm Act), Congress amended the CSA to exclude "hemp" from the definition of marijuana. See Pub. L. No. 115-334, § 12619 (Dec. 20, 2018); 7 U.S.C. § 1639o(1); 21 U.S.C. § 802(16)(B)(i). This amendment had the effect of largely legalizing at the federal level the production, possession, and sale of "hemp." The Farm Act used a substantially similar definition of

"industrial hemp" as the 2014 legislation: "the plant *Cannabis sativa L.* and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a Delta-9 [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). Marijuana and any part of the plant *Cannabis sativa L.* with a delta-9 THC concentration above 0.3 percent remain Schedule I controlled substances under the CSA. 21 U.S.C. § 812, Schedule I, (c)(10) & (17).

The Farm Act also created a cooperative-federalism program between the United States Department of Agriculture and participating States to regulate the production of hemp. 7 U.S.C. §§ 1639p, 1639q. The Farm Act provides that States have "primary regulatory authority over the production of hemp in the State," if they submit a plan to the Secretary of Agriculture "under which the State . . . monitors and regulates that production." 7 U.S.C. § 1639p(a)(1). If a State chooses not to submit a plan, then the Department of Agriculture regulates the production of hemp in that State. Under 7 U.S.C. § 1639q, "it shall be unlawful to produce hemp in [a State without an approved plan] without

a license issued by the Secretary." Virginia has an approved plan to regulate the production of hemp within Virginia. JA0205–27.

The Farm Act provides that "[n]othing in this subsection preempts or limits any law of a State or Indian tribe that (i) regulates the production of hemp; and (ii) is more stringent than this subchapter." 7 U.S.C. § 1639p(a)(3)(A)). It also contains a narrow express preemption provision: "No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State." Pub. L. 115-334, § 10114 (codified at 7 U.S.C. § 1639o note).

## B. Virginia law regarding THC products

In 2019, Virginia's definitions of "industrial hemp" and "marijuana" tracked the federal definitions in the Farm Act and CSA. See Va. Code § 3.2-4112 (2019) (defining "industrial hemp" based on the THC level allowed by federal law); Va. Code § 18.2-247 (2019) (defining "marijuana" based on the definition of industrial hemp). Thus, it was legal to sell cannabis products in Virginia if those products had a low level of delta-9 THC. See Va. Code § 18.2-248.1 (prohibiting "sell[ing], giv[ing],

distribut[ing], or possess[ing] with intent to sell, give, or distribute marijuana"). This definition, however, created a loophole that businesses soon began to exploit. It defined "hemp" and "marijuana" based on the product's concentration of delta-9 THC, the primary psychoactive compound naturally found in cannabis plants at intoxicating levels. JA0105; JA0490; JA0685. But businesses soon began manufacturing cannabis products with artificially increased levels of other psychoactive compounds, particularly delta-8 THC. JA0392; JA0585–JA0586.

"Before December 2018, products tested for THC typically had no or minimal, *i.e.*, insignificant, amounts of delta-8 THC." JA0585. Delta-8 THC "is only found in small traces in the plant." JA0691. But businesses discovered that they could "chemically convert" cannabidiol (CBD), another compound found in cannabis plants, to delta-8 THC, generally by soaking the CBD in acid. JA0585; JA0690. Thus, psychoactive products could be "[a]rtifically made by processing CBD . . . in a laboratory" to create high levels of delta-8 TCH. JA0691. Through these methods, businesses could create "synthetic THC products with the same intoxicating effects as marijuana," JA0458, but which fell outside the

10

legal definition of "marijuana" because their delta-9 THC content qualified them as "hemp" products.

This loophole soon caused an alarming public health crisis in Virginia. "In Virginia, the Poison Center [saw] a 2,300% percent increase in THC-related calls from 2018 to 2022." JA0446. This spike included "a dramatic increase" in children poisoned by THC products, many with "deceiving" packaging, JA0445–46, such as "edibles shaped like popular candies," JA0458; see JA0396. "The number of calls to poison control centers about kids 5 and under consuming edibles containing THC rose from about 207 in 2017 to more than 3,054 in 2021." JA0446.

While delta-8 THC poisonings were not limited to children, "kids are more likely to have more drastic side effects because of their size." JA0446. For children, "large overdoses" of delta-8 THC can be deadly, and "[e]ven a small dose can cause a lot of harm." JA0446; see JA0485 (detailing the tragic death of a child where "[t]oxicology results showed the child's death was caused by delta-8-tetrahydrocannabinol toxicity, resulting in extremely high levels of THC in his system"). Calls to the Poison Center regarding THC products resulted in "a 78% rate of kids being treated in a hospital, and 8% are going to the ICU," compared with

a baseline "13% rate" of calls to the Poison Center requiring hospital treatment. JA0447.

Although delta-8 THC products caused the most severe problems for young children, they also harmed adolescents and adults. This drug can cause "hallucinations, vomiting, some type of anxiety and even in serious cases [users] could pass out or be unconscious." JA0447. For example, three high school students in Virginia Beach required hospital treatment after being poisoned by gummies laced with THC. JA0447.

After a task force issued a report on the problem, Virginia's General Assembly passed SB 903. JA0402. SB 903 defines "hemp products" as those that "contain[] a total tetrahydrocannabinol concentration of no greater than 0.3 percent and (b) contain[] either no more than two milligrams of total tetrahydrocannabinol per package or an amount of cannabidiol that is no less than 25 times greater than the amount of total tetrahydrocannabinol per package." Va. Code § 3.2-4112 (the "Total THC" standard); see Va. Code § 18.2-247(D) (defining "marijuana" as cannabis plants or compounds, with exceptions including "a hemp product, as defined in § 3.2-4112"). This change prohibited the sale in Virginia of

psychoactive and dangerous THC products based on their total level of THC, including delta-8 THC or other variants. See Va. Code § 18.2-248.1.

Virginia law provides safe harbors for federally licensed hemp producers possessing or producing products in Virginia that comply with the Farm Act but would not satisfy Virginia's Total THC standard. Va. Code § 3.2-4113 states that "[i]t is lawful for a grower, his agent, or a federally licensed hemp producer to grow, a handler or his agent to handle, or a processor or his agent to process industrial hemp in the Commonwealth for any lawful purpose." *Id.*; see Va. Code § 3.2-4112 (defining "industrial hemp" as "any part of the plant Cannabis sativa . . . with a concentration of tetrahydrocannabinol that is no greater than that allowed by federal law"). Virginia law further exempts a "federally licensed hemp producer or grower or his agent" for "the possession or growing of industrial hemp or any Cannabis sativa with a tetrahydrocannabinol concentration that does not exceed the total tetrahydrocannabinol concentration percentage established in federal regulations applicable to negligent violations located at 7 C.F.R. § 990.6(b)(3)." Va. Code § 3.2-4113.

13

SB 903 prohibits licensed "processor[s from] sell[ing] industrial hemp or a substance containing an industrial hemp extract . . . to a person if the processor knows or has reason to know that such person will use the industrial hemp or substance containing an industrial hemp extract in a substance" that exceeds the Total THC standard in SB 903. Va. Code § 3.2-4116(C). The penalty for violating this provision is the suspension or revocation of the processor's Virginia license. Va. Code § 3.2-4118(A).

SB 903 includes packaging, labeling, and appearance restrictions for hemp products, designed in part to reduce the risks of children accidentally consuming the products. For instance, SB 903 prohibits hemp edibles "in the shape of a human, animal, vehicle, or fruit," and "copycat" packaging designed to make hemp products look like another product, such as candy. See Va. Code §§ 3.2-4123; 3.2-5145.4:1.[1]

The General Assembly passed SB 903 on February 7, 2023. Governor Youngkin signed the bill on April 12, 2023, and it went into effect on July 1, 2023. JA0765.

---

[1] Plaintiffs do not challenge those provisions in this lawsuit.

14

## II.   Procedural History

On September 1, 2023, more than five months after the Governor signed SB 903, and more two months after the law went into effect, Plaintiffs filed their complaint. They moved for a preliminary injunction based on claims that SB 903 is preempted by the Farm Act and violates the Dormant Commerce Clause.

Plaintiff Northern Virginia Hemp and Agriculture LLC (NOVA Hemp) alleges that it manufactures hemp products for retail sale in Virginia, and processes bulk cannabinoids, hemp food products, and hemp fiber for sale to manufacturers. JA0298–99. NOVA Hemp alleges that it "has faced an immediate loss of approximately 90% of its revenue from selling raw hemp and hemp products." JA0299. It alleges that "the customer demand for hemp products that comply with Virginia's new THC standard is much less than the demand" for the psychoactive delta-8 THC products that SB 903 prohibits. JA0299–300. NOVA Hemp does not allege that it is a licensed hemp producer under the Farm Act or Virginia law. See JA0298–300.

Plaintiff Franny's Operations, Inc. (Franny's) is a North Carolina corporation that produces and sells hemp-derived products. JA0109.

Franny's does not allege that it is a licensed hemp producer under the Farm Act or Virginia law. See JA0109. Its subsidiary, Franny's Franchising, Inc., is not a party to this case. Franny's Franchising operates franchises in various States on the East coast, including Virginia, which sell its hemp-derived products. JA0126. Franny's alleges that while its products "have a Delta-9 THC concentration of 0.3% or below," the vast majority "have a total THC content" that exceeds Virginia's limit. JA0267.

Franny's alleges that it may have "to pay increased shipping costs to ship its retail hemp products from North Carolina to states north of Virginia" due to shippers' reluctance to "transport[] those products into or through Virginia." JA0267–68. It produced no evidence, however, of the alleged increased shipping costs. JA0266–67. Franny's also alleges that it "is no longer able to purchase hemp from growers in Virginia because it does not solely manufacture retail hemp products that comply with Virginia law." JA0268.

Plaintiff Rose Lane is a Virginian who alleges that she uses hemp products to help with her arthritis symptoms. JA0302–03. Lane alleges that she is unable to obtain hemp products in Virginia that she previously

used. JA0301. She alleges that she "worr[ies] that [she] may face criminal penalties" for possessing and using "small quantities" of the products. JA0303.

The district court denied Plaintiffs' motion for a preliminary injunction on October 30, 2023, holding that all the preliminary injunction factors set forth in *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), favored Defendants. JA0766.

First, the district court held that Plaintiffs had not met their burden of showing that they were likely to succeed on the merits of their claims. Plaintiffs lacked standing for their claims that the Farm Act preempts Va. Code § 3.2-4116(C), because Plaintiffs did not allege that they are Virginia "processors" subject to potential enforcement under that provision. JA0752 (citing Va. Code § 3.2-4118(A)). Plaintiffs also lacked standing for their claim that the Farm Act preempts SB 903 based on alleged restrictions on transporting hemp products produced in compliance with federal law; Plaintiffs did not allege that their "shippers have actually had to detour around Virginia or that [their] shipping costs have increased." JA0757–58. Moreover, the district court held that Va. Code § 3.2-4113(A) "shields hemp producers and their agents who

transport federally compliant hemp products through Virginia from criminal liability." JA0758.

The district court further held that the preemption claims lacked merit. It explained that the Farm Act expressly preempts only state restrictions on "interstate transportation and shipment of industrial hemp through the Commonwealth." JA0749. "Other than that limitation, the Farm Act expressly permits states to retain 'primary regulatory authority over the production of hemp.'" JA0750 (quoting 7 U.S.C. § 1639p(a), (a)(3)(A)). The district court agreed with the Seventh Circuit's analysis of a challenge to a similar Indiana law, holding that "the Farm Act's express preemption clause—standing alone—also does not preclude a state from prohibiting the possession and sale of industrial hemp or hemp products within the state." JA0750 (citing *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020)).

The court explained that "[i]f Congress chooses to make a substance—here, industrial hemp as defined by its delta-9 THC level— legal at the federal level with respect to the Controlled Substances Act, that does not mean that Congress has mandated that the substance must be legal in every state." JA0751. "[N]othing in the 2018 Farm Bill . . .

18

supports the inference that Congress was demanding that states legalize industrial hemp, apart from specific provisions of the express preemption clause," which are limited to shipping. JA0756–JA0757 (quoting *C.Y. Wholesale*, 965 F.3d at 548). Plaintiffs' preemption claims also "ignore[] the clear text in the Farm Act" that authorizes States "to enact more stringent regulations than that provided by federal law." JA0754 (citing 7 U.S.C. § 1639p(a)(3)(A)).

The court further held that Plaintiffs' Dormant Commerce Clause claim was not likely to succeed on the merits. It found that there was "no evidence in the record" that SB 903 discriminates against out-of-state companies to favor in-state entities. JA0760. The Total THC standard applies "regardless of where [the product] comes from," so it is not a discriminatory law favoring Virginia's economic interests. JA0760. Va. Code § 3.2-4116(C) "does not have enforcement reach outside of the Commonwealth." JA0761. Nor had Plaintiffs shown that any alleged burdens on interstate commerce were "motivated by a desire to undertake economic protectionism" or discriminate against out-of-state businesses. JA0761. Similarly, Plaintiffs' claim under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), was not likely to succeed because

19

Plaintiffs "failed to plead facts plausibly showing that the Sales Restriction provision [of Va. Code § 3.2-4116(C)] imposes substantial burdens on interstate commerce to which they are subjected." JA0762.

Second, the district court found that Plaintiffs had not met their burden of proving that they would be irreparably injured without preliminary injunctive relief. Plaintiffs' fears of "potential criminal liability" were unsupported. JA0765. And Plaintiffs' claim that they would suffer irreparable financial harm was "undercut" by their months-long delay in challenging the statute. JA0765.

Lastly, the district court found that the balance of the equities and the public interest did not favor injunctive relief. It found that Defendants had shown that "delta-8 THC is a credible threat to the Virginia population, and there is a strong public interest in protecting the citizens of the Commonwealth from substances like delta-8, including a vulnerable population such as children, from hospitalizations and poisonings." JA0766.

This appeal follows.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. The moving party bears the burden of "clearly establish[ing] entitlement to the relief sought." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017); see *Sierra Club v. United States Army Corps of Eng'rs*, 981 F.3d 251, 256 (4th Cir. 2020) (preliminary injunction requires moving party to make a "strong showing that [it] is likely to succeed on the merits").

A court may issue a preliminary injunction only when the moving party clearly demonstrates "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Even if the moving party satisfies all the elements, the court retains discretion whether to issue a preliminary injunction, which should be "sparingly exercised." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

A district court's denial of a motion for preliminary injunction is reviewed for abuse of discretion. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012). The district court's factual findings are

reviewed for clear error and legal conclusions are reviewed de novo. *Di Biase v. SPX Corp.*, 872 F.3d 224, 229 (4th Cir. 2017).

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion in denying Plaintiffs' motion for a preliminary injunction. Plaintiffs do not have a likelihood of success on the merits. First, Plaintiffs lack standing for several of their claims. They lack standing for their claim that the Farm Act preempts application of SB 903 to transportation of hemp through Virginia, because they do not allege that they transport hemp produced in accordance with the Farm Act. Plaintiffs also lack standing for their claims against Va. Code § 3.2-4116(C), because that provision applies only to licensed Virginia processors, and Plaintiffs do not allege that they are such licensed processors or that the provision directly injures them.

Second, Plaintiffs' claims would also likely fail on the merits. The Farm Act does not expressly preempt the Total THC standard. The Farm Act's express preemption provision is narrow, applying only to state prohibitions on transporting hemp produced in accordance with federal law through a State. Other types of state laws regulating hemp, including laws banning the sale of delta-8 THC products, are not preempted.

Plaintiffs' implied preemption claims fare no better. The Farm Act does not occupy the field of hemp regulation; it provides for States to retain the primary regulatory authority over hemp production. And Plaintiffs' conflict preemption claim turns on the same mistaken contention that Congress intended to ban States from regulating hemp more stringently than federal law, rather than merely to remove a federal prohibition on the products.

Plaintiffs' claim that SB 903 is unconstitutional under the Dormant Commerce Clause doctrine is also not likely to succeed on the merits. Virginia's law is not protectionist, and does not discriminate against out-of-state actors. And it satisfies the *Pike* balancing test because any incidental burdens on interstate commerce are not clearly excessive compared to its local benefits.

Third, the district court did not abuse its discretion in finding that the remaining factors weigh against a preliminary injunction. Plaintiffs failed to show that they will suffer irreparable injury; they do not allege conduct exposing them to criminal enforcement, and their claims of irreparable financial harm are undercut by their months-long delay in bringing suit. The balance of equities and public interest also weigh

23

strongly against a preliminary injunction. The delta-8 THC products that Plaintiffs wish to continue selling in Virginia have caused serious public health problems, including poisoning young children. This Court should affirm.

## ARGUMENT

### I. Plaintiffs lack standing to assert several of their claims

#### A. Plaintiffs lack standing to claim that the Farm Act preempts application of SB 903 to transportation of hemp products through Virginia

First, the district court correctly held that Plaintiffs lack standing to raise several of their claims, including their claim that the Farm Act expressly preempts application of SB 903 to transportation of hemp products through Virginia. Plaintiffs bear the burden of demonstrating "a personal stake in the outcome of the controversy" that is sufficient to warrant "invocation of federal court jurisdiction." *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009). To establish standing, Plaintiffs must show that: (1) they are "under threat of suffering 'injury in fact' that is concrete and particularized," and the injury be "actual or imminent" and "not conjectural or hypothetical"; (2) the threatened injury is "fairly traceable to the challenged action of the defendant"; and (3) it is likely that "a favorable judicial decision will prevent or redress the injury." *Id.*

24

Here, the Farm Act's express preemption provision bars States from "prohibit[ing] the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 . . . through the State." 7 U.S.C. § 1639o note; see *C.Y. Wholesale*, 965 F.3d at 547.[2] None of the Plaintiffs demonstrated that it has standing to bring claims that this provision preempts the application of SB 903 to transportation of hemp products through Virginia.

Two of the Plaintiffs do not allege any relevant facts for this claim. NOVA Hemp alleges that it operates a retail store in Virginia, and Lane alleges that she wishes to purchase delta-8 THC products in Virginia for her personal use. JA0124–26. Neither alleges that they engage in shipping hemp products through Virginia to another State. They therefore do not have standing to claim that SB 903 is preempted because it prohibits such shipments. *H&R Block E. Enters., Inc. v. Raskin*, 591 F.3d 718, 723–24 (4th Cir. 2010) (district court ruling on preemption that did not "first assess whether the [federal law] actually applies" to the plaintiff was invalid "advisory opinion").

---

[2] Subtitle G of the Agricultural Marketing Act of 1946 (7 U.S.C. 1621 et seq.), which was added by the Farm Act, consists of 7 U.S.C. §§ 1639o through 1639s.

Franny's alleges that it ships its delta-8 THC products through Virginia, from North Carolina to Connecticut. Br. 27. It alleges that it is concerned its shippers may detour around Virginia due to SB 903. JA0267–68. But Franny's does *not* "allege[] that any of its shippers have actually had to detour around Virginia or that its shipping costs have increased because of SB 903." JA0757–58. It therefore failed to establish any actual or imminent injury-in-fact caused by the application of SB 903 to its shipments through Virginia. *Raskin*, 591 F.3d at 723; *Lane v. Holder*, 703 F.3d 668, 672 (4th Cir. 2012).

Franny's also failed to establish standing because it did not demonstrate that its hemp products are produced "in accordance with" the Farm Act. 7 U.S.C. § 1639o note; see JA0675–76; *C.Y. Wholesale*, 965 F.3d at 547. Because North Carolina does not have an approved state plan under the Farm Act, it is "unlawful to produce hemp in [North Carolina] without a license issued by the Secretary" of Agriculture. 7 U.S.C. § 1639q; see United States Department of Agriculture, Agricultural Marketing Service, *Status of State and Tribal Hemp Production Plans for USDA Approval*, http://tinyurl.com/huaaa5yd (last accessed Jan. 26, 2024). Franny's Operations, Inc. did not provide

26

evidence that it is a licensed producer, and it is not listed as a licensee in North Carolina. *Public Search Tool*, Agricultural Marketing Service, U.S. Department of Agriculture, http://tinyurl.com/ydzkb7x4 (last accessed Jan. 26, 2024).

Franny's therefore failed to demonstrate that it is shipping "hemp products produced in accordance with" the Farm Act through Virginia. 7 U.S.C. § 1639o note. Accordingly, it lacks standing to bring a claim that the Farm Act preempts SB 903 because SB 903 prohibits such shipments. See *Raskin*, 591 F.3d at 723. Franny's alleged injury is not caused by any prohibition on shipping through Virginia by licensed hemp producers, and a "favorable judicial decision" requiring Virginia to allow such shipments would not "prevent or redress the injury" it alleges. *Summers*, 555 U.S. at 493.

### B. Plaintiffs lack standing to challenge Va. Code § 3.2-4116(C)

Plaintiffs also failed to show that they have standing to challenge Va. Code § 3.2-4116(C). That section prohibits licensed Virginia "processor[s from] sell[ing] industrial hemp or a substance containing an industrial hemp extract . . . to a person if the processor knows or has reason to know that such person will use the industrial hemp or

substance containing an industrial hemp extract in a substance" that exceeds the Total THC standard. Va. Code § 3.2-4116(C). Violating this provision does not carry a criminal penalty; the only enforcement mechanism is to suspend or revoke the processor's Virginia license. Va. Code § 3.2-4118(A); JA0752.

Again, neither NOVA Hemp nor Lane makes any factual allegations relevant to this provision, and Franny's fails to make a sufficient showing to support standing. Franny's does not allege that it is a licensed Virginia hemp processor; it is thus not directly subject to section 4116(C). Franny's alleges that it is nonetheless injured because licensed Virginia hemp processors subject to the provision are unwilling to sell it "industrial hemp and extracts." JA0127.

Franny's allegations of indirect "injury based on restriction of distribution channels" do not establish standing. *Lane*, 703 F.3d at 672. Because Franny's "is not the direct subject of government action, but rather . . . the 'asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else,' satisfying standing requirements [is] 'substantially more difficult.'" *Id.* at 673

28

(quoting *Frank Krasner Enters., Ltd. v. Montgomery County*, 401 F.3d 230, 234–35 (4th Cir. 2005)).

*Lane* rejected standing in similar circumstances. In that case, would-be buyers of handguns challenged federal and Virginia laws restricting interstate sales of handguns. *Id.* at 670. The Court held that they lacked standing because "the laws and regulations [plaintiffs] challenge do not apply to them but rather to the [sellers] from whom they would buy." *Id.* at 672. Allegations of "[c]onsumers burdened by regulation of the sellers they transact with" demonstrate cognizable injury-in-fact only where they show that they are "burdened directly" by the challenged law, or it causes "absolute deprivation" of the product. *Ibid.* And if "any harm to the plaintiffs results from the actions of third parties not before this court," they will be "unable to demonstrate traceability." *Ibid.*

Franny's fails to meet this standard. Franny's alleges that it is a would-be buyer of hemp "burdened by regulation of the sellers [it] transact[s] with." *Ibid.* It does not allege "absolute deprivation" of the hemp it wishes to purchase; it can purchase that commodity from hemp growers in North Carolina or other States. See JA0127. Thus, "[a]t worst,

29

[Franny's alleges it is] burdened by additional costs and logistical hurdles." *Lane,* at 673. Franny's submitted no evidence demonstrating increased purchase costs caused by its alleged inability to purchase hemp from licensed Virginia processors. JA0757–58. As in *Lane*, because section 4116(C) does not "burden the plaintiffs directly, and because the plaintiffs are not prevented from acquiring the [product] they desire, they do not allege an injury in fact." *Lane*, 703 F.3d at 673.

Nor has Franny's shown that its injury is directly traceable to actions of any of the Defendants. As in *Lane*, "any injury to the plaintiffs is caused by decisions and actions of third parties not before this court rather than by the laws themselves." *Lane*, 703 F.3d at 673; see *Common Cause v. Deptartment of Energy,* 702 F.2d 245, 251–54 (D.C.Cir.1983) (no standing for consumer suit "designed to leverage third-party fuel suppliers into making pricing and allocation decisions favorable to the consuming public."). Franny's theory of harm involves the potential sales decisions of licensed Virginia processors, none of whom is a party to this case. Accordingly, Plaintiffs lack standing to challenge Va. Code § 3.2-4116(C).

## II. The district court correctly held that Plaintiffs failed to show they are likely to succeed on the merits

The district court also correctly held that Plaintiffs are not entitled to a preliminary injunction because their claims are not likely to succeed on the merits. *Winter*, 555 U.S. at 20. Plaintiffs' claims of express and implied preemption, as well as their claims under the Dormant Commerce Clause, all lack merit.

### A. Plaintiffs are unlikely to succeed on their claim that the Farm Act expressly preempts Virginia's Total THC standard

#### 1. The Farm Act does not expressly preempt SB 903

The district court correctly held that Plaintiffs are not likely to succeed on their claim that the Farm Act expressly preempts SB 903's Total THC standard. The Farm Act's express preemption clause is very narrow, applying only to state laws prohibiting shipment through the State of hemp products by licensed producers. Congress did not bar Virginia from prohibiting the sale of dangerous delta-8 THC products in Virginia.

"When a federal law contains an express preemption clause, [a court] 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (quoting *CSX*

31

*Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). Courts also employ an "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

Here, the Farm Act contains only a narrow express preemption clause, providing that "[n]o State . . . shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with [the Farm Act] through the State." 7 U.S.C. § 1639o note. "[T]hrough" is "used as a function word to indicate passage from one end or boundary to another [*e.g.*,] a highway through the forest." Merriam-Webster Dictionary, http://tinyurl.com/4daurnwk; see The American Heritage Dictionary of the English Language, Fifth Edition (2022), http://tinyurl.com/3j2yncm6 ("In one side and out the opposite or another side of"); Cambridge Dictionary, http://tinyurl.com/38wz4kmf ("from one end or side of something to the other"). In this context, it means a shipment traveling from another State, through Virginia, and into a third State.

The express preemption clause "says nothing about whether a state may prohibit possession or sale of industrial hemp" within that State. *C.Y. Wholesale*, 965 F.3d at 546. Indeed, Plaintiffs conceded below that "Congress did not explicitly state that a law banning hemp would be 'void.'" JA0678. And the clause does not prohibit States from defining "marijuana" or "hemp" differently than federal law. The Farm Act therefore does not expressly preempt such laws. See *Whiting*, 563 U.S. 582, 594.

Multiple cases have rejected similar claims that the Farm Act preempts state laws banning the possession or sale of products federally defined as hemp. The Seventh Circuit held that it was "unconvinced that the express preemption clause, standing alone, precludes a state from prohibiting the possession and sale of industrial hemp within the state." *C.Y. Wholesale*, 965 F.3d at 547. Rather, the express preemption clause "addresses only transit through the state, along with ancillary restrictions on the possession and delivery of smokable hemp to the extent that those provisions interfere with that transit." *Ibid.* Other courts have likewise held that "the 2018 Farm Act says nothing about whether a state may prohibit possession or sale of industrial hemp."

*Duke's Invs. LLC v. Char*, No. 22-00385, 2022 WL 17128976, at *5, 8 (D. Haw. Nov. 22, 2022) (rejecting express preemption claim against state law prohibiting plaintiffs from "sell[ing] and/or distribut[ing] its hemp products") (quoting *C.Y. Wholesale*, 965 F.3d at 546).[3]

Plaintiffs make no effort to distinguish *C.Y. Wholesale*. Instead, Plaintiffs argue that the Seventh Circuit "erred" in holding that "'transportation or shipment' should be read to only narrowly preempt State laws that affect just those items." Br. 20. In short, Plaintiffs urge this Court to create a circuit split with the Seventh Circuit. The Court should decline this invitation; the Seventh Circuit and district court rulings are correct.

Indeed, other provisions of the Farm Act confirm that the express preemption clause should be interpreted, in accordance with its plain

---

[3] Plaintiffs' argument that *Bio Gen, LLC v. Sanders*, __ F. Supp. 3d __, 2023 WL 5804185 (E.D. Ark. Sept. 7, 2023) (appeal pending), supports its express preemption claim is incorrect. While *Bio Gen* held that the plaintiffs had shown a likelihood of success as to their preemption claim concerning an Arkansas law, it did not adopt Plaintiffs' interpretation of the Farm Act's express preemption clause. It held that "[c]learly, under the 2018 Farm Bill, [a State] can regulate hemp production and even ban it outright if it is so inclined," and that the Farm Act's express preemption clause "means that [a State] may continue to enforce laws regarding the growing of hemp within its borders, but not its interstate transportation." *Id.* at *6–7.

meaning, to preempt only state laws prohibiting "transportation or shipment" of federally-compliant hemp products "through the State." 7 U.S.C. § 1639o note. The Farm Act's savings clause provides that it does not "preempt[] or limit[] any law of a State" that "regulates the production of hemp" and is "more stringent" than federal law. 7 U.S.C. § 1639p(a)(3)(A)). The Farm Act also acknowledges that States may ban production of hemp altogether. 7 U.S.C. § 1639p(f) (Farm Act does not prohibit production of hemp in accordance with federal laws "if the production of hemp is not otherwise prohibited by the State"). And it provides for States to retain "primary regulatory authority over the production of hemp in the State." 7 U.S.C. § 1639p(a) & (a)(3)(A).

These provisions further confirm that the preemption clause means what it says and applies only to shipment of hemp through a State, not regulation on the sale of hemp within a State. *Whiting*, 563 U.S. at 611 (rejecting preemption argument because federal law "expressly reserves to the States the authority to impose sanctions on employers hiring unauthorized workers"); *Geier v. American Honda Motor Co.*, 529 U.S. 861, 871 (2000) (reading preemption and savings clause "together"); *Pinney v. Nokia, Inc.*, 402 F.3d 430, 450 (4th Cir. 2005) ("The presence of

a savings clause counsels against a finding that Congress intended to sweep aside all state claims in a particular area."). "Although Congress may have relaxed federal restrictions on low-THC cannabis in order to facilitate a market for hemp, the law indicates that the states were to remain free to regulate industrial hemp production within their own borders." *C.Y. Wholesale*, 965 F.3d at 548.

Plaintiffs argue that these provisions should be read narrowly as allowing States to regulate only the "production" of hemp, while the preemption clause should be read broadly to prohibit States from regulating the distribution and sale of hemp. Br. 18–21. This argument gets preemption doctrine backwards: courts assume Congress did *not* preempt state law unless the statute has a "clear and manifest" statement to the contrary. *Rice*, 331 U.S. at 230. Further, the Farm Act itself creates a regulatory structure only for the "production" of hemp. 7 U.S.C. §§ 1639o, 1639p, 1639q, 1639r. Plaintiffs offer no basis to interpret the Act as nonetheless prohibiting state regulation of other aspects of hemp, including the sale of dangerous delta-8 THC products. *C.Y. Wholesale*, 965 F.3d at 547; *Duke's Invs. LLC*, No. 22-00385, 2022 WL 17128976, at *5 (D. Haw. Nov. 22, 2022) ("[T]he 2018 Farm Act 'says

nothing about whether a state may prohibit possession or sale of industrial hemp.'") (quoting *C.Y. Wholesale*, 965 F.3d at 546).

### 2. Plaintiffs' arguments to the contrary are not likely to succeed

Plaintiffs' other arguments for express preemption fail. Plaintiffs contend that the provision of "the Farm Act expressly defin[ing] hemp" as cannabis plants with "a delta-9 THC concentration of no more than 0.3 percent" expressly preempts SB 903's different definition of hemp. Br. 16. Plaintiffs also rely heavily on the Farm Act's Rule of Construction, stating that "[n]othing in this title or an amendment made by this title prohibits the interstate commerce of hemp [as defined in 7 U.S.C. § 1639o(1)] or hemp products." 7 U.S.C. § 1639o note.

But neither of these provisions is an express preemption provision. *United States v. South Carolina*, 720 F.3d 518, 528 (4th Cir. 2013) ("express preemption" is when "Congress expressly states its intent to preempt state law"). The Farm Act's definition of "hemp" does not purport to prohibit States from adopting a different definition of the term. 7 U.S.C. § 1639o(1). Similarly, the Rule of Construction provides only that "nothing *in this title*"—that is, in the federal law itself—"prohibits the interstate commerce of hemp." 7 U.S.C. § 1639o note (emphasis added).

37

It does not say that a State may not prohibit commerce in hemp within its territory. Indeed, if Plaintiffs' reading of the provisions were correct, then the Farm Act's actual express preemption provision, barring States from "prohibit[ing] the transportation or shipment of hemp" in certain circumstances, would be rendered superfluous. *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."); *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 669 (2007) (similar). And Plaintiffs' reading would create a conflict with the savings clause, which expressly grants States authority to prohibit things the Farm Act permits. See *Geier*, 529 U.S. at 871. In short, the provisions say nothing about state law, and therefore cannot expressly preempt it.

Plaintiffs also argue that *Gonzalez v. Raich*, 545 U.S. 1 (2005), supports their express preemption claims. Br. 17–18. This argument rests on a fundamental misunderstanding of both *Raich* and express preemption doctrine. *Raich* held that Congress has authority under the Commerce Clause to criminalize the intrastate possession of marijuana. *Raich*, 545 U.S. at 22. But the fact that Congress may legislate in an area

does not bar the States from doing so. "Virginia and the federal government[ are] separate sovereigns," and "[o]ne of the chief virtues of our system of dual sovereignty is that each sovereign can approach problems in divergent ways." *United States v. Alvarado*, 440 F.3d 191, 199 (4th Cir. 2006). The States and the federal government "can and often do define and prosecute similar criminal conduct in divergent ways." *Id.* at 198. Thus, "[o]ur federal system would be turned upside down if [a court] were to hold that federal criminal law preempts state law whenever they overlap." *Kansas v. Garcia*, 589 U.S. ____, 140 S. Ct. 791, 806 (2020).

The CSA contains no clause expressly preempting state law concerning controlled substances, and it disclaims any "intent on the part of the Congress to occupy the field." 21 U.S.C. § 903. States have long enforced their own laws concerning controlled substances; state law may permit the sale of substances prohibited under the CSA, and conversely may prohibit the sale of substances that the CSA does not reach. See p. 6, *supra*. "If Congress chooses to make a substance—here, industrial hemp as defined by its delta-9 THC level—legal at the federal level with respect to the Controlled Substances Act, that does not mean that

39

Congress has mandated that the substance must be legal in every state." JA0751. As the district court held, "Plaintiffs' inversion of the holding in *Raich* is inapposite." *Ibid.*

Finally, to the extent Plaintiffs contend that the Farm Act expressly preempts SB 903 because SB 903 prohibits shipment of hemp products through Virginia, they have also not established a likelihood of success on this claim. Plaintiffs lack standing to raise such a claim, see pp. 24–27, *supra*, and it therefore fails at the threshold.

The claim also misinterprets SB 903. Again, the Farm Act expressly preempts only state laws that "prohibit the transportation or shipment of hemp or hemp products produced in accordance with [the Farm Act] . . . through the State." 7 U.S.C. § 1639o note. SB 903 does not do so; it provides a safe harbor allowing such transportation. Section 4113 states that "[i]t is lawful for a grower, his agent, or a federally licensed hemp producer to grow, a handler or his agent to handle, or a processor or his agent to process industrial hemp in the Commonwealth for any lawful purpose." Va. Code § 3.2-4113. Moreover, the provision also creates a safe harbor protecting a "federally licensed hemp producer or grower or his agent" for possessing "industrial hemp or any Cannabis sativa with a

40

[THC] concentration that does not exceed the total [THC] concentration percentage established in federal regulations." *Ibid.* Thus, licensed hemp producers, handlers, or their agents may possess and transport "industrial hemp" through Virginia if the THC concentrations in the products satisfy federal law. *Ibid.*

Plaintiffs argue that the exception for "industrial hemp" excludes "hemp products." Br. 26. But SB 903 defines "[i]ndustrial hemp" as "any part of the plant Cannabis sativa, including seeds thereof, whether growing or not, with a concentration of [THC] that is no greater than that allowed by federal law." Va. Code § 3.2-4112; compare 128 Stat 649 (defining "industrial hemp" as "the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a Delta-9 [THC] concentration of not more than 0.3 percent"). While this definition "includes an industrial hemp extract that has not completed all stages of processing," it does not *exclude* processed products. Va. Code § 3.2-4112. Further, the safe harbor applies to possession of "*any* Cannabis sativa with a [THC] concentration that does not exceed the total [THC] concentration percentage established in federal regulations," as well as to "industrial hemp." Va. Code § 3.2-4113. Thus, the exception protects

41

transportation through Virginia of hemp products produced in accordance with federal law irrespective of whether they meet Virginia's Total THC standard.

The district court correctly held that Plaintiffs are not likely to succeed on the merits of their express preemption claim.

### B. Plaintiffs' implied preemption claims are also not likely to succeed on the merits

The district court also correctly held that Plaintiffs failed to show a likelihood of success on their claims of implied preemption. Plaintiffs raise two implied preemption claims: that the Farm Act occupies the field of hemp regulation, and that SB 903 conflicts with the Farm Act. Both claims lack merit.

### 1. Plaintiffs' claim that the Farm Act occupies the field of hemp regulation is meritless

The district court correctly held that Plaintiffs' claim of "field" preemption lacks merit.

Implied field preemption exists only where "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (internal

quotation marks and citation omitted). Field preemption is rare and disfavored; "federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963); see *New York Dep't of Social Services v. Dublino*, 413 U.S. 405, 415 (1973) (rejecting "the contention that preemption is to be inferred merely from the comprehensive character of the federal" program); *Kansas v. Garcia*, 589 U.S. ____, 140 S. Ct. 791, 801 (2020) (implied preemption claims cannot be based on a "brooding federal interest or appealing to a judicial policy preference"); see pp. 5–6, 9, *supra*.

Congress has not preempted the field of hemp regulation. To the contrary, the CSA explicitly disclaims any "intent on the part of the Congress to occupy the field in which [the CSA] operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State." 21 U.S.C. § 903. The Farm Act amends the CSA to exclude "hemp" from the

federal definition of marijuana. See pp. 7–8, *supra*; Pub. L. No. 115-334, § 12619(b) (Dec. 20, 2018). Plaintiffs cannot reconcile Congress's express disavowal of field preemption with their field preemption claim.

Plaintiffs' field preemption claim also "ignores the clear text in the Farm Act that expressly grants states the authority to regulate hemp production by empowering them to enact more stringent regulations than that provided by federal law." JA0754; see 7 U.S.C. § 1639p(a)(3)(A). Indeed, the Farm Act has multiple provisions demonstrating that Congress did not intend to bar States from regulating hemp—including its creation of a cooperative State-federal regulatory program, with States acting as the "primary regulators." 7 U.S.C. § 1639p(a); see pp. 8–9, 34–36, *supra*. And the Farm Act does not "thoroughly occup[y]" the field of hemp regulation." *Cipollone*, 505 U.S. at 516. To the contrary, the Farm Act is silent "on matters beyond regulating hemp production," JA0757, such as the sale of hemp products. As the district court held, the Farm Act's provisions are not the "hallmark of Congress occupying the entirety of a legislative field so as to disempower the states; quite the opposite." JA0754–55.

44

Plaintiffs argue that these provisions are consistent with field preemption because the "legislative field need not be expansive." Br. 21–22. They attempt to analogize hemp to nuclear power plants, where Congress "occupied the entire field of nuclear safety concerns" while States remained involved with other aspects of power generation. *Id.*, citing *Pacific Gas & Electric Company v. State Energy Resource Conservation & Development Commission*, 461 U.S. 190 (1983). But the federal statute there gave "exclusive jurisdiction" to a federal agency to regulate nuclear safety, such that "no role was left for the states." *Id.* at 207. The Farm Act has no such provision.

Plaintiffs point to the provision setting forth how hemp "was to be defined" under federal law. Br. 22. But that provision simply provides a definition of "the term 'hemp'" for use "in this subchapter." 7 U.S.C. § 1639o. In other words, the provision does no more than define the meaning of the term for a particular *federal* law. Again, the federal government and the States are dual sovereigns, and it is commonplace that they will sometimes define the same term differently for use in their own statutes. See *Alvarado*, 440 F.3d at 198 (rejecting the argument "that since both the federal and state charges each included a count of

45

conspiracy to distribute cocaine, the offenses must be the same"). Nothing in the Farm Act requires States to use the same definition of "hemp" as the federal government. Far more than a federal definition provision is required to demonstrate that Congress "occupied the field." Br. 22; *Garcia*, 140 S. Ct. at 806 ("The mere fact that state laws like the Kansas provisions at issue overlap to some degree with federal criminal provisions does not even begin to make a case for conflict preemption.").[4] Plaintiffs' field preemption claim is not likely to succeed on the merits.

### 2. Plaintiffs' conflict preemption claim is also not likely to succeed on the merits

The district court also correctly held that Plaintiffs failed to show that the Total THC standard is preempted on the ground that it conflicts with the Farm Act.

---

[4] Plaintiffs' claim that the Farm Act preempted the field is also contrary to their apparent concession that the Farm Act did not preempt other provisions of SB 903, such as those regulating the packaging, labeling, and appearance of delta-8 THC products. JA0685 (citing Va. Code § 3.2-4123(A)(1) (requirement of "child-resistant packaging"); (A)(2) (requiring label on THC products stating that "the product may not be sold to persons younger than 21 years of age"); and (B) (prohibiting sale of "a regulated hemp product that depicts or is in the shape of a human, animal, vehicle, or fruit")).

There are two types of implied "conflict" preemption: impossibility preemption and obstacle preemption. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); see *Raskin*, 591 F.3d at 723. Impossibility preemption applies where "it is impossible for a private party to comply with both state and federal law." *Raskin*, 591 F.3d at 723; *Wyeth v. Levine*, 555 U.S. 555, 573 (2009) ("Impossibility pre-emption is a demanding defense"). Plaintiffs have conceded that "there is no basis for conflict preemption premised on impossibility. 'It is not impossible for a person to comply with both SB 903 and the Farm Act, as there are substances and products that are legal under both.'" JA0755 n.12 (quoting JA0190).

Obstacle preemption is not present here either. Obstacle preemption occurs when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines*, 312 U.S. at 67; *Raskin*, 591 F.3d at 723. Like other types of implied preemption, obstacle preemption claims must meet a demanding standard: "preemption cannot be based on 'a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives.'" *Garcia*, 140 S. Ct. at 801 (quoting *Whiting*, 563 U.S. at 599). "No more than in field preemption can the Supremacy Clause be deployed

[in obstacle preemption] to elevate abstract and unenacted legislative desires above state law; only federal laws 'made in pursuance of' the Constitution, through its prescribed processes of bicameralism and presentment, are entitled to preemptive effect." *Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1907 (2019); see *Wyeth*, 555 U.S. at 574 ("If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70–year history.").

Thus, a court "should not seek out conflicts . . . where none clearly exists." *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 598 (4th Cir. 2005) (alteration, internal quotation marks, and citation omitted); see *Raskin*, 591 F.3d at 723 (same). And "[t]he case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." *Wyeth*, 555 U.S. at 575 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166–67 (1989)).

No such clear conflict exists here. "The mere fact that state laws . . . overlap to some degree with federal criminal provisions does not even

48

begin to make a case for conflict preemption." *Garcia*, 140 S. Ct. at 806. And Congress is certainly aware that the States have continued to operate in this field. 21 U.S.C. § 903 (disclaiming any intent to "occupy the field," including for "criminal penalties, to the exclusion of any State law on the same subject matter"). Indeed, States have long regulated controlled substances, including prohibiting "other psychoactive drugs, such as salvia" that were "not scheduled by the DEA." *C.Y. Wholesale*, 965 F.3d at 548 (citations omitted); see 6–7, *supra*. Yet Congress chose to include only a narrow express preemption provision in the Farm Act, paired with multiple other provisions recognizing the States' ongoing authority to regulate hemp. Among them is a provision that "expressly permits the states to adopt rules regarding industrial hemp production that are 'more stringent' than the federal rules." *C.Y. Wholesale*, 965 F.3d at 548 (citations omitted). Thus, States' continued regulation in this area, including prohibitions on the sale of delta-8 THC products, does not conflict with Congress's purposes. Other courts, including the Seventh Circuit, have accordingly rejected similar conflict preemption claims. *C.Y. Wholesale*, 965 F.3d at 548; see *Duke's Invs. LLC*, 2022 WL 17128976, at *5–6.

49

Plaintiffs argue that the purpose and objective of the Farm Act was to create an interstate market for hemp, and that SB 903 stands as a clear obstacle to this purpose. Br. 23–25. This argument amounts to question begging. Plaintiffs point to nothing in the statutory text to demonstrate that Congress had a purpose or objective of mandating that every State legalize hemp according to the federal government's definition. That Congress de-scheduled hemp under the CSA "does not even begin to make a case for conflict preemption" of Virginia's law prohibiting dangerous delta-8 THC products. *Garcia*, 140 S. Ct. at 806.

Plaintiffs' claim that SB 903 is preempted because it conflicts with the Farm Act is not likely to succeed on the merits.

### C. Plaintiffs are not likely to succeed on their claims that SB 903 violates the Dormant Commerce Clause

The district court also correctly held that Plaintiffs failed to show a likelihood of success on their claims that SB 903 violates the Dormant Commerce Clause. SB 903 comports with the Dormant Commerce Clause because it does not discriminate against out-of-state businesses, and it does not impose "substantial burdens on interstate commerce" compared to its local benefits. JA0762.

The "core" of the Dormant Commerce Clause is an "antidiscrimination principle" that "prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *National Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (opinion of Gorsuch, J.) (cleaned up). "If there is no discrimination, a court will consider . . . whether the state laws 'unjustifiably . . . burden the interstate flow of articles of commerce.'" *Brown v. Hovatter*, 561 F.3d 357, 363 (4th Cir. 2009) (quoting *Oregon Waste Sys. Inc. v. Department of Env't Quality of Or.*, 511 U.S. 93, 98 (1994)).

Here, Plaintiffs concede that the Total THC standard of Va. Code § 3.2-4112 is not discriminatory. JA0193, JA0760. But Plaintiffs argue that Va. Code § 3.2-4116(C) "is patently discriminatory to interstate commerce, as it will effectively forbid out-of-state buyers, like Franny's Farmacy, from having access to Virginia hemp." JA0760.

Plaintiffs are incorrect. As the district court concluded, this argument fails because it is simply "another attempt by plaintiffs to challenge the Commonwealth's decision to control the production of industrial hemp within its borders." JA0761. Section 4116(C) prohibits

51

licensed Virginia processors from selling industrial hemp "if the processor knows or has reason to know that such person will use the industrial hemp" to create a product that would violate the Total THC standard. Va. Code § 3.2-4116(C).

Franny's Farmacy asserts that it believes this provision will increase its costs to purchase hemp because licensed Virginia processors will not sell hemp to out-of-state buyers intending to create delta-8 THC products. JA0760–61. But these allegations are not even sufficient to demonstrate standing, given that Franny's is not itself subject to section 4116(C) and has not shown that its costs to purchase hemp actually have increased. See pp. 16–18, 27–30, *supra*.

In any event, Plaintiffs fail to show that section 4116(C) is "designed to benefit in-state economic interests by burdening out-of-state competitors." Br. 31. The provision plainly prohibits licensed Virginia processors from selling to *Virginia* buyers who intend to sell products *in Virginia* that would violate the Total THC standard. Va. Code § 3.2-4116(C). And it plainly does not prohibit licensed Virginia processors from selling to out-of-state buyers who intend to sell products that comply with the Total THC standard. *Id.* Thus, Plaintiffs are incorrect that the

provision "only permit[s] Virginia buyers to be able to buy Virginia industrial hemp." Br 31. The provision says no such thing. Even assuming Plaintiffs were correct that it applies to out-of-state companies intending to sell hemp products solely out-of-state, section 4116(C) would simply place the exact same restrictions on out-of-state buyers as on Virginia buyers. As the district court held, the "alleged burdens on interstate commerce are incidental and plaintiffs have not alleged any facts showing that this provision of SB 903 was motivated by a desire to undertake economic protectionism or to discriminate against out-of-state hemp businesses." JA0761. It therefore does not "discriminate against interstate commerce," because it treats out-of-state businesses no worse than in-state businesses. *National Pork Producers Council*, 598 U.S. at 370–71 (law is not discriminatory where it "imposes the same burdens on in-state pork producers that it imposes on out-of-state ones").

Plaintiffs also have not demonstrated that section 4116(C) even applies to sales to out-of-state businesses intending to sell products solely out-of-state. SB 903 is plainly aimed at regulating sales of THC products within the Commonwealth. See pp. 9–14, *supra*. Nothing in section 4116(C) clearly evinces a legislative intent to reach the retail sale of hemp

products occurring solely in other States, and Plaintiffs have not shown why the provision should be read that broadly. See, *e.g.*, *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489 (4th Cir. 2007) (interpreting state law to "not reach sales outside [the State's] borders" where "nothing in the language of [the] statute compels interpreting the state's law to forbid transactions in the other forty-nine states" and the State generally does not give its laws "extraterritorial reach"); *Moreno v. Baskerville*, 452 S.E.2d 653, 655 (Va. 1995) ("Every crime to be punished in Virginia must be committed in Virginia."); *Kelly v. R.S. Jones & Associates*, 406 S.E.2d 34, 37 (Va. 1991) (holding that a Virginia statute "has no extraterritorial effect").

Plaintiffs' argument that section 4116(C) is invalid under the test articulated in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), fares no better. Br. 30–32. Where there is no discrimination, as is the case here, see pp. 19–20, 52–53, *supra*, the Dormant Commerce Clause applies only if "the law's incidental burdens on interstate commerce might still be 'clearly excessive in relation to [its] putative local benefits.'" *Colon Health Centers of Am., LLC v. Hazel*, 813 F.3d 145, 155 (4th Cir. 2016) (quoting *Sandlands C&D LLC v. Cty. of Horry*, 737 F.3d 45, 53 (4th Cir.2013)); see

*Association for Accessible Medicines v. Frosh*, 887 F.3d 664, 668 (4th Cir. 2018) (asking whether the state laws "'unjustifiably . . . burden the interstate flow of articles of commerce'"). When analyzing "putative local benefits" and weighing them against "incidental burdens on interstate commerce," courts "apply a rational basis standard of review." *Id.* at 155–56 (quoting *Pike*, 397 U.S. at 142, and citing *Colon Health*, 733 F.3d at 535).

Here, section 4116(C) satisfies the deferential rational basis standard. Courts must give "due deference to the body whose primary responsibility it is to judge the benefits and burdens of Virginia legislation: the Virginia legislature." *Colon Health Centers*, 813 F.3d at 156. It is certainly rational for the Virginia legislature to conclude that barring licensed hemp processors from selling hemp to buyers when they know or have reason to know that the buyers intend to violate the Total THC standard will help achieve the legislative purpose of preventing the sale of dangerous psychoactive products.

Indeed, federal law contains a similar provision that punishes any person who knowingly "possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical

will be used to manufacture a controlled substance except as authorized by this subchapter." 21 U.S.C. § 841(c)(2). Congress concluded that tighter control over sales of such precursor products helps prevent the sale and consumption of dangerous drugs. See *United States v. Jae Gab Kim*, 449 F.3d 933, 938 n.8 (9th Cir. 2006) (explaining in case involving sale of pseudoephedrine to make methamphetamine that the "Combat Methamphetamine Epidemic Act strengthened the recording requirements of the federal statute and further restricted sales of pseudoephedrine"); *United States v. Perry*, 583 F. App'x 90, 91 (4th Cir. 2014) (affirming conviction for possession of pseudoephedrine under § 841(c)(2)). Virginia's similar judgment here is equally rational. Courts "are ill-equipped to 'second-guess the empirical judgments of lawmakers concerning the utility of legislation.'" *Colon Health Centers*, 813 F.3d at 156. Plaintiffs' assertions that such a policy choice has no legitimate local interest lacks merit.

Further, Plaintiffs' argument that the provision lacks "local benefit" and is "extraterritorial" is again based on its unsupported assumption that the provision reaches sales to out-of-state buyers who intend to sell the resulting hemp products solely out-of-state. See pp. 19, 52–54, *supra*.

56

But even under Plaintiffs' capacious construction, section 4116(C) still would not be unconstitutionally "extraterritorial" because it regulates the sale of industrial hemp in Virginia and is enforced solely through regulating the Virginia license of hemp processors. JA0761; see Va. Code § 3.2-4116(C); *Moreno*, 452 S.E.2d at 655.

For all these reasons, the district court correctly held that Plaintiffs have failed to show a likelihood of success on their Dormant Commerce Clause challenge.

### III. The remaining preliminary injunction factors weigh against relief

#### A. The district court did not abuse its discretion in holding that Plaintiffs would not suffer irreparable harm in the absence of injunctive relief

The district court did not abuse its discretion in holding that Plaintiffs failed to satisfy the second requirement for a preliminary injunction, establishing that they would suffer irreparable harm without injunctive relief.

To qualify for a preliminary injunction, Plaintiffs must make "a strong showing of irreparable harm if the injunction is denied." *Scott's Co. v. United Indus. Co.*, 315 F.3d 264, 271 (4th Cir. 2002). The irreparable harm must be "neither remote nor speculative, but actual and

57

imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quotation and citation omitted). And Plaintiffs "must demonstrate more than just a 'possibility' of irreparable harm. 'Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a "clear showing" that the plaintiff is entitled to relief.'" *Di Biase*, 872 F.3d at 230 (quoting *Winter*, 555 U.S. at 22).

Plaintiffs failed to meet this burden here. As the district court found, "Plaintiffs' allegations of harm are undercut by the delay with which they undertook filing this civil action to enjoin enforcement of SB 903." JA0765; see *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (delay in pursuing an action may show "an absence of the kind of irreparable harm required to support a preliminary injunction"). The legislature passed SB 903 on February 7, 2023. Governor Youngkin signed it on April 12, 2023. And it went into effect on July 1, 2023. Despite at least one plaintiff publicly opposing SB 903 as far back as February 2023, Plaintiffs waited until September 1, 2023, to bring suit. JA0377; JA0490 (NOVA Hemp's owner, Travis Lane

opposing SB 903). Given the extended delay by Plaintiffs in bringing suit, the district court did not abuse its discretion in finding that Plaintiffs failed to make the required strong showing that they would be irreparably harmed absent preliminary relief.

Plaintiffs also otherwise failed to meet their burden to show that they faced imminent irreparable harm. Plaintiffs argued that they faced two types of irreparable harm: criminal liability and financial injury. JA0764. As the district court found, Plaintiffs did not show that they faced imminent criminal enforcement. JA0765, JA0756–58; see *Watson v. Buck*, 313 U.S. 387, 400–01 (1941) (plaintiff must demonstrate "[t]he imminence and immediacy of proposed enforcement" of criminal law against plaintiff to warrant injunction).

Lane alleges that she "worr[ies] that [she] may face criminal penalties" for possessing "small quantities" of delta-8 THC products. JA0303. But Virginia law does not criminalize possession of marijuana products for personal use. Va. Code § 18.2-248.1 (prohibiting possession of marijuana only "with intent to sell, give, or distribute," and providing "[t]here shall be a rebuttable presumption that a person who possesses no more than one ounce of marijuana possesses it for personal use").

59

NOVA Hemp and Franny's also do not allege that they are currently engaging in any conduct that is criminal under SB 903. JA0268 (no longer imports the products into Virginia); JA0300 (can no longer import products). Plaintiffs therefore have not shown that they face imminent criminal enforcement, and their claims of irreparable harm are unsupported.

Plaintiffs also failed to make the required strong showing that they will suffer irreparable financial injury absent preliminary relief. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Di Biase*, 872 F.3d at 230 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). "A plaintiff must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of judgment." *Ibid.* (citing *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994)).

60

Here, Lane did not allege that she would suffer irreparable financial harm. JA0302–04. Franny's alleged that it might have to "pay increased shipping costs to ship its retail hemp products from North Carolina to states north of Virginia." JA0764. But, despite waiting for two months after the law went into effect to bring suit, Franny's provided no factual support for that speculation. JA0764. Moreover, again, Franny's does not even have standing for that claim given that it is not a licensed hemp producer. See pp. 28–30, *supra*. Franny's also points to a drop in revenue at a franchisee of its nonparty subsidiary, the Franny's franchise in Virginia. JA0126. But a parent corporation cannot rely on harm to its nonparty subsidiary to establish irreparable injury. 11 A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed.1995) (applicant must demonstrate that in the absence of a preliminary injunction, "*the applicant* is likely to suffer irreparable harm before a decision on the merits can be rendered" (emphasis added)); *Smith Setzer & Sons, Inc. v. South Carolina Procurement Rev. Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994) ("It is considered a 'fundamental rule' that '[a] shareholder—even the sole shareholder—does not have standing

to assert claims alleging wrongs to the corporation.'" (quoting *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731 (2d Cir.1987)).

NOVA Hemp asserts that it experienced decreased sales and revenue due to SB 903's prohibition on sales of delta-8 THC products. JA0764–65 (discussing drops in revenue for NOVA Hemp and Franny's Farmacy franchise in Warrenton, VA). But again, financial harm alone is typically not an irreparable injury. *Sampson*, 415 U.S. at 90 ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury . . . ."). NOVA Hemp did not produce evidence that it will imminently be forced to cease operations without a preliminary injunction. JA0299–300 (claiming that it "anticipated" the effect of SB 903 may cause NOVA Hemp to have to "lay off employees in the future" at some unspecified time); see *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 436 (2d Cir. 1993). It also produced no evidence that its "lost profits would be highly speculative," and unrecoverable for that reason. *Ibid.*; see also *Payroll Express Corp. v. Aetna Casualty & Sur. Co.*, 659 F.2d 285, 292 (2d Cir.1981).

Therefore, the district court did not abuse its discretion in holding that Plaintiffs failed to carry their burden to demonstrate that they would suffer irreparable harm absent a preliminary injunction.

### B. The balance of equities weighs against a preliminary injunction, which would not be in the public interest

The district court also did not abuse its discretion in holding that the final two preliminary injunction factors, the balance of equities and the public interest, weigh against an injunction here as well. When an injunction is sought against the government, these two factors merge. See *Nken v. Holder*, 556 U.S. 418, 435 (2009).

As the district court found, "delta-8 THC is a credible threat to the Virginia population, and there is a strong public interest in protecting the citizens of the Commonwealth from substances like delta-8, including a vulnerable population, such as children, from hospitalizations and poisonings." JA0766. Plaintiffs make no showing that this finding is clearly erroneous. Indeed, Virginia demonstrated below that "[d]elta-8, a lab-made cannabinoid extracted from hemp," caused a spike in poisonings in Virginia, including numerous hospitalizations. JA0458. Virginia poison control centers saw a 2,300% increase in THC-related calls between the federal legalization of delta-8 THC products in 2018

and 2022. JA0446. These "synthetic THC products with the same intoxicating effects as marijuana" had serious negative effects, including "hallucinations, vomiting, some type of anxiety and even in serious cases [users] could pass out or be unconscious." JA0447.

The harm delta-8 THC products caused was especially severe for young children. JA0458; see pp. 11–12, *supra*. "The number of calls to poison control centers about kids 5 and under consuming edibles containing THC rose from about 207 in 2017 to more than 3,054 in 2021." JA0446. Many children required hospital treatment, and delta-8 THC poisoning tragically killed at least one Virginia child. JA0485; see JA0486–87; see p. 11, *supra*. Thus, the balance of equities and the public interest strongly weigh against an injunction because prohibiting the sale of these dangerous delta-8 THC products protects the health and safety of vulnerable Virginians. *Pashby v. Delia*, 709 F.3d 307, 331 (4th Cir. 2013) (explaining that "the public interest in this case lies with safeguarding public health" rather than budgetary concerns).

Plaintiffs' desire to continue profiting from the sale of these dangerous products does not show that the balance of equities or public interest weighs in their favor. Plaintiffs assert an interest in vindicating

the supremacy of federal law, but as discussed above they fail to demonstrate that SB 903 is preempted or violates the Dormant Commerce Clause. See pp. 31–50, 50–57, *supra*. The Farm Act expressly recognizes the important role States play in regulating hemp, and the record evidence demonstrates how critical Virgina's regulation is to protecting the health and safety of vulnerable populations, especially young children. The district court did not abuse its discretion in finding that the equitable factors weigh against a preliminary injunction.

## CONCLUSION

This Court should affirm the judgment of the district court.

Respectfully submitted,

THE COMMONWEALTH OF
VIRGINIA, *et al.*

By:_____*/s/ Erika L. Maley*_____
        Erika L. Maley
        *Principal Deputy Solicitor General*

JASON S. MIYARES
   *Attorney General*

STEVEN G. POPPS
   *Deputy Attorney General*

CAL BROWN
   *Senior Assistant Attorney General*

ANDREW N. FERGUSON
   *Solicitor General*

ERIKA L. MALEY
   *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

January 26, 2024
                                *Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 12,820 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Erika L. Maley*
_____
Erika L. Maley

## CERTIFICATE OF SERVICE

I certify that on January 26, 2024, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Erika L. Maley*

Erika L. Maley