**Record No. 23-2192**
(1:23-cv-01177-LMB-IDD)

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

# NORTHERN VIRGINIA HEMP AND AGRICULTURE, LLC, *et al.*,

## Plaintiffs – Appellants,

## v.

# THE COMMONWEALTH OF VIRGINIA, *et al.*,

## Defendants – Appellees.

---

Appeal from the United States District Court for the
Eastern District of Virginia, Alexandria Division

---

## APPELLANTS' REPLY BRIEF

---

James N. Markels (VSB #68399)
jnm@cwattorney.com
Thomas Westberg-Croessmann (VSB #88086)
twc@cwattorney.com
CROESSMANN & WESTBERG, P.C.
8000 Towers Crescent Drive
Suite 1575
Tysons, VA 22182
Phone: (703) 483-3550
Facsimile: (703) 349-3414

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ……………………………………………………….... ii

Argument ……………………………………………………………….... 1

   I.     The Farm Act Expressly Preempts SB 903 Because the Rule of
         Construction Forbids Appellees' Reading of the Farm Act. ………......... 1

   II.    The Farm Act Impliedly Preempts SB 903 Because SB 903
         Interferes with the Nationwide Market for Hemp Created by the
         Farm Act. ………………………………………………………….. 6

   III.   SB 903's Global Prohibition on the Sale of Industrial Hemp
         Necessarily Exports Virginia Law Beyond Its Borders in
         Violation of the Dormant Commerce Clause. ………………………… 10

   IV.   Appellants are Suffering Irreparable Harm Because the Banned
         Products Are Criminalized as Marijuana under SB 903, and
         Franny's Cannot Purchase Virginia Industrial Hemp—That Harm
         Also Grants the Appellants Standing. ….…………………………….... 13

        a.   Appellees' Threadbare Delay Argument Fails. ……………………. 13

        b.   Irreparable Harm and Standing Under the Total THC Standard. ….. 15

        c.   Irreparable Harm and Standing Under the Sales Restriction. ……… 18

        d.   No Monetary Remedies are Available to the Appellants,
            Who are Suffering Ongoing Harm. ………………………………... 19

   V.    The Balance of the Equities Favors Enforcement of the
         Farm Act. …………………………………………………………… 20

Certification of Compliance …………………………………………….... 23

Certificate of Service …………………………………………………… 24

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*AK Futures, LLC v. Boyd St. Disco, LLC*, 35 F.4th 682 (9th Cir. 2022) ………..... 7

*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) …………………………………… 2

*April in Paris v. Bonita*,
    No. 2:19-cv-02471-KJM-CKD (E.D. Cal. Mar. 6, 2023) ………………… 5

*Ass'n for Accessible Medicines v. Frosh*, 887 F.3d 664 (4th Cir. 2018) ………... 11

*Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848 (7th Cir. 2000) …………….. 18-19

*Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc.*,
    467 U.S. 837 (1984) …………………………………………………………... 7

*C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020) …………. 4-5, 9-10

*Di Biase v. SPX Corp.*, 872 F.3d 224 (4th Cir. 2017) …………………………..... 19

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ………………………………………... 12

*Freeman v. Corzine*, 629 F.3d 146 (3d Cir. 2010) …………………………... 18-19

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) ……………………………… 8

*Gen. Motors Corp. v. Tracy*, 519 U.S. 278 (1997) …………………………... 13, 18

*Gonzales v. Raich*, 545 U.S. 1 (2005) ……………………………………………... 6

*Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) ……………………... 2

*Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012) ……………………………….. 18-19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) …………………………..... 16

*Man Hing Ivory & Imports, Inc. v. Deukmejian*, 702 F.2d 760 (9th Cir. 1983) ….. 5

*Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75 (4th Cir. 1989) ….. 14

*Ray Communications, Inc. v. Clear Channel Communications, Inc.*,
    673 F.3d 294 (4th Cir. 2012) ……………………………………….. 14

*Reckitt & Colman, Ltd. v. DEA*, 788 F.2d 22 (D.C. Cir. 1986) …………………... 7

*Sandlands C&D, LLC v. City of Horry*, 737 F.3d 45 (4th Cir. 2013) …………..... 12

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) …………….. 20

*Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690 (4th Cir. 2021) ……........... 14

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) …………………….... 17

*United States v. Goodwin*, 457 U.S. 368 (1982) ………………………………… 16

*United States v. Mallory*, 372 F. Supp. 3d 377 (S.D.W. Va. 2019) ……………… 7

*Wickard v. Filburn*, 317 U.S. 111 (1942) ………………………………………… 4

**<u>Statutes</u>**

7 U.S.C. § 1639o ………………………………………………………… *passim*

7 U.S.C. § 1639p ………………………………………………………3-4, 19

7 U.S.C. § 1639q ……………………………………………………..... 3, 19

7 U.S.C. § 1639r ……………………………………………………...2, 8

U.S. Const. Art. IV, cl.2 ……………………………………………… 22

Va. Code § 3.2-4113 ……………………………………………….. 17

Va. Code § 3.2-4116 ……………………………………………....... 11-12, 18

Va. Code § 4.1-600 ……………………………………………………… 15

iii

Va. Code § 18.2-247 ……………………………………………………….. 15

Va. Code § 18.2-248 ……………………………………………………….. 15

Va. Code § 18.2-248.1 ………………………………………………….. 15-16

Va. Code § 18.2-371.2 ……………………………………………………... 15

Va. Code § 54.1-3401 …………………………………………………… 15

Va. Code § 54.1-3408 …………………………………………………… 15

## **Other Authorities**

H.R. Rep. No. 115-1072 (Conf. Rep.) ……………………………………… 8

Merriam-Webster Dictionary
    (https://www.merriam-webster.com/dictionary/through) ………………….. 2

*Schedules of Controlled Substances: Temporary Placement of*
    *MDMB-4en-PINACA, 4F-MDMB-BUTICA, ADB-4en-PINACA,*
    *CUMYL-PEGACLONE, 5F-EDMB-PICA, and MMB-FUBICA*
    *into Schedule I*, 88 F.R. 86040 (Dec. 12, 2023) …………………………...21

# ARGUMENT[1]

Appellees insist that the "Farm Act does not prohibit Virginia from adopting its own, more stringent, definition of hemp." Appellees' Br. at 2. That is flat wrong. The only thing the Farm Act permitted Virginia to regulate more stringently was the "production" of hemp within its borders, which only refers to cultivation by Appellees own concession. Appellees seek to use Virginia's narrow authority over cultivation as a camel's nose to upend the federal government's entire market for hemp and its products, all because of Delta-8 THC, a naturally-occurring chemical in cannabis that the federal government is well aware of and has expressly chosen to legalize. The Total THC Standard and the Sales Restriction both go far beyond what the States have been allowed to regulate for hemp, and they must be enjoined.

## I. The Farm Act Expressly Preempts SB 903 Because the Rule of Construction Forbids Appellees' Reading of the Farm Act.

Appellees' erroneously argue that the only part of the Farm Act that expressly preempts State law is the clause titled "Transportation of Hemp and Hemp Products" that states: "[n]o State . . . shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with [federal law] through the State." 7 U.S.C. § 1639o note (the "Transportation Clause").[2] Appellees Br. at 32-33, 40.

---

[1] For ease of reference, this Brief will use the same shorthand descriptors used in Appellants' Opening Brief.

[2] Appellees' argument assumes without analysis that "through" as it is used in the Transportation Clause must mean products that enter the Commonwealth from

Nothing in the text of the Farm Act supports Appellees' narrow inference. Express preemption focuses on "statutory intent," which should "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009). Even when "a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008).

The text of the Farm Act supports a finding of express preemption. It specifically defines hemp. 7 U.S.C. § 1639o. It gives the USDA sole authority to issue regulations on hemp. 7 U.S.C. § 1639r(a)(1)(A), (b), and (c)(3)(B). And then it contains the Transportation Clause and a Rule of Construction, which mandates that "[n]othing in this title or an amendment made by this title prohibits the ***interstate commerce*** of hemp [as defined in 7 U.S.C. § 1639o(1)] ***or hemp products***." Pub. L. 115-334, § 10114 (codified at 7 U.S.C. § 1639o note) (emphasis added). The Rule of Construction, by its terms, includes the Transportation Clause in its ambit, which

---

another State and then exit the Commonwealth to a third State, without noting that a product that travels from Richmond to Fairfax, for example, also passes "through" Virginia. *See* MERRIAM-WEBSTER DICTIONARY ("used as a function word to indicate movement within a large expanse."), https://www.merriam-webster.com/dictionary/through (last visited February 2, 2024). Thus, the Transportation Clause can easily apply to any transportation of hemp in Virginia.

is in the very same note as the Rule.

The Farm Act specifies that there is "no preemption" of any law by a State or Indian tribe that "regulates the production of hemp" that is "more stringent" than federal law. 7 U.S.C. § 1639p(a)(3)(A).[3] The Farm Act goes so far as to permit States to ban cultivation of hemp altogether. 7 U.S.C. § 1639p(f)(2).

Taken together, the Farm Act makes it clear that Congress has specifically defined hemp and has prohibited States (and this Court) from construing any part of the Farm Act as allowing the prohibition of hemp in interstate commerce. Therefore, Appellees' argument, that the Transportation Clause is the sole source of preemption, is meritless, because that interpretation allows the States to restrict hemp's access to interstate commerce in violation of the Rule of Construction. The Rule of Construction, therefore, expressly preempts State laws that limit the interstate commerce of hemp to the extent not otherwise allowed under the Farm Act, i.e. cultivation.

Appellees object to that reading and argue that if the Rule of Construction protects hemp in interstate commerce, it would render the Transportation Clause

---

[3] The Production Exception is, by its plain terms, limited to the ***cultivation*** of hemp, as already set forth in the Virginia Plan, which makes no mention of the sale, transport, manufacture, or consumption of hemp products. *See* 7 U.S.C. §§ 1639p, 1639q. Appellees appear to concede as much. *See* Appellees' Br. at 8-9 (acknowledging that "Virginia has an approved plan to regulate the ***production*** of hemp within Virginia.") (emphasis added); *and see* JA 205-29 (the Virginia Plan).

superfluous. Appellees' Br. at 37-38. Not so. As mentioned above, the Farm Act

permits the States to outright ban the cultivation of hemp. 7 U.S.C. § 1639p(f)(2)

("Nothing in this section prohibits the production of hemp in a State . . . if the

production of hemp is not otherwise prohibited by the State[.]"). Certainly, a ban on

cultivation impedes the interstate commerce of hemp. *See Wickard v. Filburn*, 317

U.S. 111, 127-28 (1942) (holding that cultivation of wheat affected interstate

commerce). Since Congress expressly allowed the States to bar cultivation, in

exception to the Rule of Construction, it made sense for Congress to include a

requirement that the States allow the transportation of hemp in that circumstance,

through the Transportation Clause. In other words, the Farm Act expressly requires

that hemp be allowed in interstate commerce, except in those instances where the

State chooses to bar cultivation under the Production Exception, in which case the

State must at a minimum permit the transportation of hemp. The two clauses simply

work in the alternative.

Appellees then argue that a ban on possession of Banned Products could

coexist with an allowance that those same products be allowed "through" a State.

Appellees' Br. at 32-35. That's an impossibility—the Seventh Circuit rejected the

same argument, that "one can transport [a banned substance] through the state

without violating its prohibition on possession of [that banned substance,]" noting

that such an argument would be "laughed out of court." *C.Y. Wholesale, Inc. v.*

*Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020). Thus, Appellees' view that the Transportation Clause of the Farm Act allows Virginia to outright prohibit possession of any hemp is simply wrong.

Appellees further argue that the States have long been permitted to criminalize drugs not subject to the CSA. Appellees' Br. at 39-40. But that is inapplicable here, because this is not a situation where Virginia is criminalizing a drug that federal law is silent on. While hemp was excised from the CSA's ambit, hemp, as defined in 7 U.S.C. § 1639o, is specifically granted protection in transportation and interstate commerce in the Farm Act. As a result, Virginia's Total THC Standard specifically criminalizes products that are expressly ***legal*** under federal law. This is why the Seventh Circuit's analogy to salvia in *C.Y. Wholesale*—and Appellees' analogies to benzylfentanyl and thenylfentanyl, Appellees' Br. at 6—fail: none of those drugs enjoy the protections that hemp does. Appellees fail to point to any case in which States were permitted to criminalize a product that was expressly granted protection in interstate commerce like hemp—to the contrary, courts have rejected that position. *See April in Paris v. Bonta*, No. 2:19-cv-02471-KJM-CKD (E.D. Cal. Mar. 6, 2023) (JA 250-64); *Man Hing Ivory & Imports, Inc. v. Deukmejian*, 702 F.2d 760, 761 (9th Cir. 1983) (state criminalization of ivory products preempted by Endangered Species Act's protection of ivory in interstate commerce).

In the end, the plain language of the Farm Act expressly protects hemp in interstate commerce, unless the State chooses to ban cultivation, in which case it must at least allow hemp to be transported through the State. Virginia has chosen not to ban hemp cultivation. Therefore, it must allow hemp in interstate commerce. *See Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005) (defining scope of interstate commerce). The Total THC Standard, which bans a portion of federally-legal hemp as marijuana, is expressly prohibited under the Rule of Construction and the plain language of the Farm Act, and is thereby expressly preempted. The Sales Restriction, which prohibits the interstate sale of industrial hemp, also violates the Rule of Construction, and is expressly preempted.

## II.    The Farm Act Impliedly Preempts SB 903 Because SB 903 Interferes with the Nationwide Market for Hemp Created by the Farm Act.

The Farm Act not only specifically defines hemp, but Congress has explicitly stated that the States are not permitted to change that definition. Thus, the Total THC Standard must fall. The Farm Act also sets in place a nationwide market for hemp that the Total THC Standard and the Sales Restriction both obstruct. In the event those provisions do not amount to express preemption, as argued in Section I, they surely amount to implied preemption under either conflict or field preemption.

Appellees confusingly begin their defense of SB 903 against implied preemption by arguing that the CSA does not preempt it. Appellees' Br. at 43-44.

6

Appellants' preemption argument starts and ends with the Farm Act, not the CSA. The text of the Farm Act specifically defines hemp as including "all derivatives, extracts, cannabinoids, isomers," and so forth of the cannabis plant, "with a Delta-9 [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). The terms "derivatives, extracts, [and] cannabinoids" are read broadly, and clearly include Delta-8 THC. *AK Futures, LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 690-91 (9th Cir. 2022).[4] This definition was deliberately broader than was originally set out in the prior 2014 Farm Act. *See United States v. Mallory*, 372 F. Supp. 3d 377, 379 n.1 (S.D.W. Va. 2019). Congress also made it clear that it did not intend for the States to create their own definitions of hemp to conflict with the new agricultural regime that the Farm Act was putting in place: "state and Tribal governments are authorized to put more restrictive parameters on the production of

---

[4] Amici argues that Delta-8 THC or other isomers of Delta-9 THC should not be considered "derivatives" of hemp, citing to *Reckitt & Colman, Ltd. v. DEA*, 788 F.2d 22 (D.C. Cir. 1986). In that case, a distributor of buprenorphine argued that the DEA incorrectly deemed the drug a "derivative" of an opiate, thus making it an illegal narcotic under the CSA. *Id.* at 23-24. The D.C. Circuit held that the DEA's interpretation of "derivative" in that instance was reasonable and entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc.*, 467 U.S. 837 (1984). 788 F.2d at 25-26. Obviously, *Rickett & Colman* is not applicable to this case, where this Court is not being asked to evaluate an agency's interpretation of a statute. *Chevron* deference does not apply here. Rather, this Court evaluates the statute itself, and the only federal appellate court to have analyzed the scope of the word "derivative" as it applies to hemp in the Farm Act held that the word easily included Delta-8 THC in its ambit, as well as manufactured hemp products. *See AK Futures, LLC*, 35 F.4th at 690-91.

7

hemp [defined as cultivation], ***but are not authorized to alter the definition of hemp***." H.R. Rep. No. 115-1072 (Conf. Rep.); App. 301, R. Doc. 51-2, at 16 (emphasis added); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 874 (2000) (looking to comments of the federal act in question and its legislative history to determine the purpose and intent of the act). Congress' stated intent that the States abide by the federal definition of hemp should be enough to settle the matter, and the reason for Congress' position is obvious: it would be impossible to have effective interstate commerce for a product that is defined 52 different ways (one for each State and the District of Columbia, and the Farm Act). Appellees do not cite to any case where a State was permitted to elude federal protections for a product by simply redefining that product under that State's law. The Total THC Standard clearly conflicts with the purpose and function of the Farm Act as Congress intended it to operate, and must be preempted.

Moreover, the form of the Farm Act makes it clear that Congress was occupying the field of hemp regulation, and not leaving a defined role for the States to play beyond their optional plan for hemp cultivation. Congress placed the USDA in charge of promulgating regulations on hemp and did not provide a role for States. *See* 7 U.S.C. § 1639r(a)(1)(A) and (b) and (c)(3)(B). Appellants agree that under the States' role to protect the health and welfare of its citizens, Virginia may pass laws

regarding age restrictions and packaging for hemp products.[5] But the Farm Act, by its express terms, envisions a limited role for the States, and otherwise protects the interstate commerce market for hemp. The Total THC Standard upends Congress' intent to create a nationwide market for legal hemp by making certain federally legal hemp products illegal in Virginia, and the Sales Restriction interferes with that same congressional intent by impeding the ability of Virginia hemp growers to sell their industrial hemp in interstate commerce.

Appellees fall back on their position that the Production Exception encompasses the power to modify the federal definition of hemp as well as the market in hemp. Appellees' Br. at 44. But as Appellees concede, "production" in the Farm Act means cultivation, and Virginia's regulation of the "production" of hemp is embodied in the Virginia Plan. *See* Section I, *supra*. This is the fundamental flaw in the reasoning of *C.Y. Wholesale*—that the Production Exception somehow empowers States to control more than just cultivation, which is simply unsupported by the text of the Farm Act. 965 F.3d at 547.

---

[5] That the Appellants do not challenge those provisions of SB 903 does not undercut the strength of their arguments against the Total THC Standard or the Sales Restriction. *See* Appellees' Br. at 46, n.4. Regardless whether State-imposed age restrictions or packaging regulations are permitted under the Farm Act, Appellants welcome such measures because Appellants support the creation of a hemp market that protects the health and welfare of all citizens.

Finally, Appellees argue that the Total THC Standard poses no conflict with or obstacle to the Farm Act because States are permitted to regulate a drug that the federal government is silent on. Appellees' Br. at 49. However, as noted in the previous Section, the Farm Act is ***not*** silent on hemp. Hemp is not only excised from the CSA, but it is explicitly defined and granted protections in interstate commerce by the Farm Act—a situation far removed from salvia as erroneously relied upon in *C.Y. Wholesale*, 965 F.3d at 548, and from the other drugs Appellees mention.

Accordingly, whether under conflict preemption or field preemption, the Total THC Standard and the Sales Restriction run afoul of federal law and must be enjoined.

**III.    SB 903's Global Prohibition on the Sale of Industrial Hemp Necessarily Exports Virginia Law Beyond Its Borders In Violation of the Dormant Commerce Clause.**

The plain terms of the Sales Restriction make it clear that it has the impermissible effect of exporting Virginia's Total THC Standard outside the boundaries of the Commonwealth, by preventing out-of-state buyers (none of whom are otherwise subject to the Total THC Standard because Virginia is the *only* place with that standard) from being able to buy Virginia-grown industrial hemp that is otherwise entitled to protection in interstate commerce under the Rule of Construction. None of Appellees' arguments to the contrary carry water.

10

Appellees first argue that the Sales Restriction is part of Virginia's authority under the Production Exception. Appellees' Br. at 51. But "production," as noted in the Sections above, only concerns cultivation. Virginia's entire plan for the "production" of hemp is contained in the Virginia Plan, JA 205-29, which makes no mention whatsoever regarding the sale or purchase of hemp or products manufactured from industrial hemp. The Sales Restriction makes it clear that it prohibits the sale of industrial hemp to anyone, anywhere in the world, "if the processor knows or has reason to know that such person will use the industrial hemp" to manufacture a product that violates the Total THC Standard. Va. Code § 3.2-4116(C). It has nothing to do with the processes or methods for the cultivation of hemp, as Appellees claim.

Appellees next argue that the Sales Restriction passes muster because it subjects in-state and out-of-state buyers to the same standard—neither may use the purchased industrial hemp to violate the Total THC Standard. Appellees' Br. at 52-53. The problem, aside from the fact that the Total THC Standard should be preempted under federal law for reasons stated previously, is that ***no one*** outside Virginia is subject to the Total THC Standard. The implication is clear: people may only have access to Virginia-grown hemp if they comply with Virginia law, which creates an "extraterritorial reach" that is prohibited under the Dormant Commerce Clause. *Ass'n for Accessible Medicines v. Frosh*, 887 F.3d 664, 669 (4th Cir. 2018).

Appellees then insist that the Sales Restriction only seeks to regulate the sale of hemp products in the Commonwealth. Appellees' Br. at 53-54. But by its terms, it goes much further than that. The Sales Restriction makes it very clear that the only products that may be manufactured with Virginia-grown industrial hemp *anywhere in the world* are products that satisfy the Total THC Standard. Va. Code § 3.2-4116(C). But that begs the question: why would Virginia care whether Virginia industrial hemp is used by Franny's to create Banned Products that are legal to sell in other States? The answer is, it should not care, and Virginia cannot profess an interest in regulating the products that are sold in other States. *See Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) ("the State has no legitimate interest in protecting nonresident" transactors). And yet, the Sales Restriction, by its terms, seeks to restrict the manufacture of Banned Products *worldwide*. If Virginia did not intend that reach, then it should have placed a limitation in the Sales Restriction. That it did not has placed a burden on interstate commerce than is "clearly excessive in relation to [its] putative local benefits." *Sandlands C&D, LLC v. City of Horry*, 737 F.3d 45, 53 (4th Cir. 2013).

What purported "local benefits" are generated by the Sales Restriction? Appellees claim that it serves the purpose "of preventing the sale of dangerous psychoactive products." Appellees' Br. at 55. To whom? In Virginia, Banned Products are illegal as marijuana, so Virginia has already prohibited the sale of

Banned Products within its borders. But again, what is Virginia's interest in preventing the sale of Banned Products elsewhere? How does Virginia gain a ***local*** benefit from prohibiting a citizen of North Carolina from purchasing a Banned Product manufactured from Virginia industrial hemp? Appellees deliberately sidestep that question, instead arguing that there can be no extraterritorial effect because the Sales Restriction only punishes Virginia growers, and not the out-of-state buyers. Appellees' Br. at 56-57. That's simply not true. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997) ("cognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates, and customers of that class may also be injured"). Appellees' inability to articulate a truly local interest to support the Sales Restriction strongly counsels against its legality under the Dormant Commerce Clause.

**IV.    Appellants are Suffering Irreparable Harm Because the Banned Products are Criminalized as Marijuana under SB 903, and Franny's Cannot Purchase Virginia Industrial Hemp—That Harm Also Grants the Appellants Standing.**

### *a. Appellees' Threadbare Delay Argument Fails.*

Appellees begin their attack on Appellants' irreparable harm claim by defending the district court's determination that the Appellants' filing of the lawsuit two months after SB 903 went into effect constitutes sufficient delay to erode Appellants' claim of irreparable harm. Appellees' Br. at 58-59. Appellees focus on

13

NOVA Hemp's public opposition to SB 903 back in February of 2023, but that is irrelevant because Appellees do not suggest, nor can they, that any of the Appellants could have brought suit in February of 2023—two months before the final bill was even signed! Indeed, Appellees offer no case—and there is none—holding that delay in filing suit to challenge a law is counted from a time *before the law even goes into effect*. *See Ray Communications, Inc. v. Clear Channel Communications, Inc.*, 673 F.3d 294, 301 (4th Cir. 2012) (holding that consideration of delay does not include any time prior to when a lawsuit can be filed).

The case Appellees cite, *Quince Orchard Valley Citizens Association, Inc. v. Hodel*, 872 F.2d 75 (4th Cir. 1989), which concerned an attempt to stop the building of a road, and where this Court found unreasonable delay when suit to enjoin the construction was not filed until nine months after administrative approvals were granted for the construction, and where such delay was found to have increased construction costs. Appellees offer no opinion from *any* court where a mere two months was held to be too long, nor do they explain how Appellants' two-month delay caused any increased costs as in *Quince Orchard*. Moreover, this Court has held that parties are allowed time to estimate the impact of an act before filing suit. *See Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690, 718 (4th Cir. 2021). Two months is not too long a period for the Appellants to have used to evaluate the effect

of SB 903, especially since Virginia's enforcement of penalties for noncompliance did not start until a month later. JA 199. The delay argument is meritless.

### b. *Irreparable Harm and Standing under the Total THC Standard.*

It is undisputed that SB 903's Total THC Standard transformed the Banned Products into marijuana, which is still illegal in Virginia but for small amounts only for "personal use." *See* Va. Code § 18.2-248.1. The Appellees' brief completely ignores the obvious fact that the Appellants all face potential criminal sanction from possessing, transporting, or transacting in the Banned Products, all of which Appellees concede were legal in Virginia prior to SB 903 going into effect. *See* Va. Code §§ 4.1-600, 18.2-247(D), 18.2-248, 18.2-248.1, 18.2-371.2, 54.1-3401, 54.1-3408. NOVA Hemp, a manufacturer and retail seller of Banned Products, is obviously irreparably harmed by having their products be deemed illegal—not only does their possession and sale of Banned Products expose them to criminal liability, but the prohibition has destroyed their business. JA 298-300. Ms. Lane, a purchaser and consumer of Banned Products, is obviously irreparably harmed because she cannot legally purchase the products she relies on to treat her arthritis symptoms, and that she will be criminally liable if she possesses more than a mere ounce of the Banned Products. JA 302-03. Franny's, an out-of-state manufacturer of Banned Products who then ships and sells those items in franchises in Virginia and Connecticut, among other States, is obviously irreparably harmed in the same ways

15

as NOVA Hemp, but with the added harm of facing increased costs to ship their Banned Products around instead of through Virginia.[6] JA 266-69.

Being exposed to criminal sanction is not only irreparable harm, but it also gives standing. Under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.5 (1992), constitutional standing comprises of an "injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," with a "causal connection between the injury and the conduct complained of" and that is "likely" to be "redressed by a favorable decision." By converting federally legal hemp products into illegal marijuana places the Appellants, who have all alleged to be manufacturers, sellers, possessors, or consumers of the Banned Products, into the situation of being criminally liable to engage in transactions that were once legal, and, for the reasons Appellants have given, *should* be legal. JA 266-68, 298-300, 302-03. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). As a result, Appellants have clearly each been harmed by not being allowed to transact in the Banned Products. *Id.*, and JA 731.

Appellees argue that Appellants' criminal liability is not sufficiently "imminent" if they are not currently in danger of being subject to that liability.

---

[6] Appellees do not contest that the "personal use" exception under Va. Code § 18.2-248.1 might reasonably apply to retail manufacturers, sellers, and shippers of Banned Products.

Appellees' Br. at 59-60. However, Appellees do not dispute that Virginia has been fining retailers that sell Banned Products,[7] and "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part and concurring in the judgment).

Appellees try to finesse the issue by claiming that standing must only be determined according to their interpretation of the Transportation Clause. Appellees' Br. at 24-27. The argument is a straw man that fundamentally misstates the thrust of the Appellants' challenge to SB 903, as Appellants do not rely on the Transportation Clause for their challenge to the Total THC Standard or the Sales Restriction, as mentioned above in Sections I and II.[8]

---

[7] JA 199.

[8] Appellees' cramped view on standing would make sense if Appellants were challenging Virginia's law regarding who is able to transport industrial hemp through the Commonwealth. *See* Va. Code § 3.2-4113(A). Appellants are not challenging that statute precisely because it does not utilize the Total THC Standard that *is* being challenged. The whole point of Va. Code § 3.2-4113(A) is to exempt certain individuals (a "grower," "handler," or a "processor") from criminal sanction when transporting or handling industrial hemp as defined under the Farm Act, which allows them to transport and handle Banned Products. Appellants, who are not so exempted, *would* face criminal sanction. If the Total THC Standard were enjoined, Va. Code § 3.2-4113(A) would be superfluous—there would be no need to grant an exemption to transact in the Banned Products because the Banned Products would no longer be banned.

### c. *Irreparable Harm and Standing under the Sales Restriction.*

Appellees also question whether Franny's has been injured by or has standing to challenge the Sales Restriction, which prevents Virginia processors from selling industrial hemp to its out-of-state business. *See* Va. Code § 3.2-4116(C). Franny's, as an out-of-state buyer of industrial hemp, is directly harmed by SB 903's prohibition on Virginia processors from selling to Franny's because Franny's, like every other hemp business outside of Virginia, is not subject to Virginia's Total THC Standard. JA 266-69. "Consumers burdened by regulation of the sellers they transact with may be able to establish that they have suffered an injury in fact, as the Supreme Court has made clear in the context of Commerce Clause litigation." *Lane v. Holder*, 703 F.3d 668, 672 (4th Cir. 2012) (*citing General Motors Corp.*, 519 U.S. at 286). The *Lane* Court cited to two other decisions, *Freeman v. Corzine*, 629 F.3d 146 (3d Cir. 2010), and *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848 (7th Cir. 2000), where those sister circuits held that there was "standing for wine consumers prevented from acquiring wine directly from out-of-state wine sellers as a result of marketplace regulation." 703 F.3d at 672.

This case is more akin to *Freeman* and *Bridenbaugh* than to *Lane*. *Lane* concerned a Virginia law prohibiting Virginia firearms dealers from selling handguns to non-residents of Virginia. This Court held that since the plaintiffs could obtain the same handguns from other sources, they did not suffer an injury in fact.

18

703 F.3d at 673. After all, handguns are fungible—there is no difference between the handguns in Virginia and those of other States. However, in *Freeman* and *Bridenbaugh*, State laws restricting the interstate commerce in wine met with a different result because wine, like hemp, is an agricultural product that varies based on where and how it is grown. A variety of grape grown in California's Napa Valley will obtain a different wine than if the same variety is grown in New Jersey—climate, soil, and a variety of other factors combine to generate a fundamentally different product. Hemp, as an agricultural product, subject to differing cultivation regulations depending on the State—see 7 U.S.C. §§ 1639p and 1639q—is akin to wine and not handguns, and thus this Court should follow the reasoning of *Freeman* and *Bridenbaugh* to hold that Franny's, as an out-of-state buyer of industrial hemp to use to create its hemp products, has suffered an injury in fact by being denied access to Virginia industrial hemp, even though it is not directly regulated by Virginia.

### d. No Monetary Remedies are Available to the Appellants, Who are Suffering Ongoing Harm.

It must also be noted that none of the Appellants are able to obtain monetary remedies as a result of SB 903's ban on the Banned Products, which further emphasizes that the harm they each face is irreparable. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). Appellees do not argue otherwise, and thus concede that point. Appellees also do not dispute that the harm from SB 903 is ongoing as

19

long as the law is in effect, with the expectation of continuing future harm, which also weighs in favor of injunctive relief. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108-09 (1998).

Taken together, the Appellants each have standing to challenge the Total THC Standard, which is causing irreparable harm to them as long as that provision remains in force. Franny's has standing to challenge the Sales Restriction, which is causing it irreparable harm. Therefore, these aspects of SB 903 must be enjoined.

## V.    The Balance Of The Equities Favors Enforcement Of The Farm Act.

Appellees insist that Delta-8 THC has created a public health threat to the citizens of Virginia, particularly children, which equitably weighs in favor of the Total THC Standard. Appellees' Br. at 63-64. But compared to what? According to the National Poison Data System, Delta-8 THC exposures constituted 0.2% of all exposures to substances received by Virginia poison control centers in 2022—175 exposures out of over sixty-one thousand reported exposure cases.[9] Analgesics, cleaning substances, antidepressants, antihistamines, cosmetics—each of these were far more likely to be the cause of a poisoning, and yet while all poisonings are tragic, Virginia is not scrambling to ban or severely limit those items. In reality, Virginia's concern is over what Delta-8 THC's danger *might be in the future*, based on recent

---

[9] *See*: https://poisoncenters.org/national-poison-data-system (last visited February 2, 2024).

increases in reported exposures. Appellees' Br. at 63-64 (citing a "2,300% increase in THC-related calls" over four years). Appellees have not explained, nor can they, why age restrictions and packaging regulations are not sufficient to curb Delta-8 THC exposures to minors in the same way that those same restrictions and regulations work to protect minors from alcohol and medical marijuana—the latter being far more intoxicating than Delta-8 THC products.

What Appellees don't acknowledge is that the federal government is well-aware of Delta-8 THC, and yet has persistently refused to put any limits on it or change the definition of hemp under 7 U.S.C. § 1639o, thus disagreeing with Virginia's claims. On December 12, 2023, the DEA published a notice to temporarily "schedule six synthetic cannabinoids" under Schedule I of the CSA "to avoid imminent hazard to public safety."[10] Delta-8 THC was not one of those substances. Indeed, the definition of hemp used in the Farm Act is broader than the definition in the 2014 law, indicating the federal government's view that the dangers of derivatives and isomers of cannabis, like Delta-8 THC, are not the public health threat that Virginia has claimed them to be, and that the Farm Act's definition of

---

[10] *Schedules of Controlled Substances: Temporary Placement of MDMB-4en-PINACA, 4F-MDMB-BUTICA, ADB-4en-PINACA, CUMYL-PEGACLONE, 5F-EDMB-PICA, and MMB-FUBICA into Schedule I*, 88 F.R. 86040 (Dec. 12, 2023), https://www.federalregister.gov/documents/2023/12/12/2023-27243/schedules-of-controlled-substances-temporary-placement-of-mdmb-4en-pinaca-4f-mdmb-butica [https://perma.cc/465E-5UXV]. (Last visited February 2, 2024).

21

hemp reflects Congress' judgment as to what subset of cannabis is sufficiently safe for Americans to grow and consume. Under the Supremacy Clause, Congress' judgment prevails.

Given that the federal government has intentionally created a nationwide market for hemp, instructed that States were not empowered to create their own definition of hemp, and have afforded States a limited role in regulating and restricting the interstate commerce in hemp, as argued above, the equities clearly lie in favor of enforcing the federal law over Virginia's Total THC Standard. Moreover, Appellees do not contend, nor can they, that the Sales Restriction has anything to do with the health of Virginians, or that it has any other equitable benefit in its favor, and so the equities do not lie in favor of upholding that law either.

In sum, the district court abused its discretion in holding that the balance of the equities and the public interest weighed against the grant of injunctive relief enjoining SB 903 as requested by the Appellants.

Date: February 2, 2024

Respectfully submitted,

*/s/ James N. Markels*
James N. Markels (VSB #68399)
jnm@cwattorney.com
Thomas Westberg-Croessmann
(VSB #88086)
twc@cwattorney.com
CROESSMANN & WESTBERG, P.C.
8000 Towers Crescent Drive
Suite 1575
Tysons, VA 22182
Phone: (703) 483-3550
Facsimile: (703) 349-3414

## CERTIFICATION OF COMPLIANCE

Appellants certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 6,200 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). Appellants further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ James N. Markels*
James N. Markels (VSB #68399)
*Attorney for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of February, 2024, a true copy of this Appellants' Reply Brief was electronically filed via the CM/ECF system, which will deliver an electronic copy thereof to all counsel of record.

*/s/ James N. Markels*
James N. Markels (VSB #68399)
CROESSMANN & WESTBERG, P.C.
8000 Towers Crescent Drive
Suite 1575
Tysons, VA 22182
Phone: (703) 483-3550
Facsimile: (703) 349-3414
Email: jnm@cwattorney.com
*Attorney for Appellants*